STATE, APPELLANT, *v.* CAMP SING, RESPONDENT.

[Submitted March 31, 1896.   Decided April 6, 1896.]

CONSTITUTIONAL LAW—*Licenses.*—The legislature has full power to enact a license law unless it is forbidden by the constitution.

SAME—*Construction.*—In construing a constitutional provision the proceedings and debates of the framers of the constitution may be examined as tending to show what its terms were understood to designate and include.

SAME—*Same.*—A constitutional provision should not be so construed as to nullify a law unless it is clear that such a construction was intended.

SAME—*Laundry license tax—Construction of section 1, article XII.*—The word "also" in the last sentence of section 1, article XII of the constitution, providing that "The legislative assembly may also impose a license tax both upon persons and upon corporations doing business in the state," which follows the provision that the revenue for the support of the state shall be provided for by taxes, was not used to carry over into the sentence where it occurs the idea expressed in the sentence preceding it, to the effect that the legislature may also impose license taxes for the support of the state, but was used simply to connect the idea of the two systems of revenue, and therefore the imposing of license taxes is not restricted to the purposes of state revenue alone.

SAME—*Same—Construction of section 4, article XII.*—A license tax is not within the inhibition of the constitution (§ 4, Article XII) that the legislative assembly shall not levy taxes upon the inhabitants or property in any county, city or town, or municipal corporation, for county, town or municipal purposes, but it may by law vest in the corporate authorities thereof powers to assess and collect taxes for such purposes. The intent of this section and section 1, *Id.*, to refer to taxation proper, and not to licenses, is expressed in the use of the words "levy," "assess," and "rate," when speaking of taxes, and the use of the word "impose," when speaking of licenses.

SAME—*Laundry license tax.*—The laundry license tax law (Political Code, §§ 4079 *et seq.*) which allows seventy per cent. of the licenses to be retained by the county, is not repugnant to section 4, article XII of the constitution, as levying a tax upon the inhabitants or property in a county for county purposes.

*Appeal from Second Judicial District, Silver Bow County.*

ACTION to recover a license fee.   Judgment was rendered for the defendant below by SPEER, J., on demurrer to the complaint.   Reversed.

Statement of the case by the justice delivering the opinion.

The state appeals from a judgment rendered against it upon the sustaining of defendant's demurrer to the complaint.   The state brought the action to recover a license fee of $50, alleged to be due from defendant for conducting the laundry business for six months, and also for costs and penalties amounting to $17.

The statute under which the state claimed the license is section 4079 of the Political Code, which is as follows:

"Section 4079. Every male person engaged in the laundry business, other than the steam laundry business, must pay a license of ten dollars per quarter: provided, that where more than one person is engaged or employed or kept at work, such male person or persons shall pay a license of twenty-five dollars per quarter, which shall be the license for one place of business only."

The contention of the defendant upon the demurrer is that this license law of the Political Code is unconstitutional and void under article XII of the constitution. The sections of that article upon which he bases his contention are Nos. 1 and 4, which are as follows:

"Section 1. The necessary revenue for the support and maintenance of the state shall be provided by the legislative assembly, which shall levy a uniform rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, except that specially provided for in this article. The legislative assembly may also impose a license tax, both upon persons and upon corporations doing business in the state."

"Section 4. The legislative assembly shall not levy taxes upon the inhabitants or property in any county, city or town, or municipal corporation for county, town or municipal purposes, but it may by law vest in the corporate authorities thereof powers to assess and collect taxes for such purposes."

This license tax was imposed by the legislative assembly. (Political Code, § 4079.) Under the provisions of sections 3075 and 4050 of the Political Code, seventy per cent. of the license tax provided for is to be retained by the county, and thirty per cent. paid over to the state. The district court held that, as a portion of this license tax, to wit, seventy per cent., went to the county, the law was void under section 4, article XII of the constitution, in that the legislative assembly had thus attempted by section 4079, Political Code, to levy a tax

upon the inhabitants or property in a county for county pur-
poses. Whether this legislation upon the question of licenses
is constitutional is the question for determination of the opin-
ion below.

*Henri J. Haskell,* Attorney General, *Ella Knowles Haskell,*
and *Carpenter & Carpenter,* for Appellant.

I. A license tax is not a tax within the meaning of the
word "taxes" in section 4 of article XII of the constitution.
In the constitution are developed two separate and distinct
schemes for raising revenue, to-wit: (a.) The taxation
scheme. (b.) The license scheme. The license scheme is
composite—formed by blending in the legislative assembly the
power to license for regulation with the power to license for
revenue. The constitutional scheme of taxation applies only
to property (Constitution, Article XII, §§ 1, 4, 11, 12.) It
will be observed from this entire taxation scheme is excepted
the matter of licenses, which matter by the last sentence of
section 1, is left entirely with the legislative assembly. If the
license provision is mandatory, it is mandatory only in name,
for there is no power in the state that can force the legislative
assembly to act.

The words "assess," "levy" and "rate" as used in the
above cited sections of the constitution were intended to apply
to taxation upon the ownership of property, and are the apt
words to indicate such application. They were not regarded
by the framers of the constitution as suitable words to express
the imposition of a license tax and so where a license tax is
provided for in that instrument the word "impose" is used.
All taxes are personal. Land is not taxed—the owner is taxed
because he owns the land. The land itself does not care
whether it is protected or contributes to the support of the
government or not, but the owner does. In the same sense
the license tax is a tax upon the person conducting a profes-
sion or occupation. "The individual, and not his property
pays the tax. The property is resorted to for the purpose of
ascertaining the amount of the tax with which the owner must

be charged." (*Green* v. *Craft*, 28 Miss. 70.) The tax is imposed upon the person of the owner on account of his ownership of the property. (*Rundell* v. *Lakey*, 40 N. Y. 517; *Everson* v. *City of Syracuse*, 29 Hun. 486; Burroughs on Taxation, § 7; Cooley on Taxation (2nd Ed.) page 436.) In section 4 the words "taxes upon the inhabitants or property" express a single idea, and that is a tax for revenue on account of the ownership of property. When section 4 is read in connection with the license provision of section 1, it is clear that although "taxes upon the inhabitants" and "taxes upon property" separately considered may not always mean the same thing, yet the effect of both expressions combined is to limit the restriction of section 4 to taxation of property, whether as matter of form the tax be assessed upon the property or assessed to the owner. That section should be so interpreted as simply to prohibit the legislative assembly from levying property taxes in a county for county purposes. The word "inhabitants" in said section was not intended to have a technical meaning. As used in some connections that word has a signification broad enough to include a people, a country and the property of a country. (Endlich on Statutes, § 91; *Walnut* v. *Wade*, 103 U. S. 693.) The section for another reason cannot apply to license taxes, as a particular provision is made for them in section 1, and the particular provision for license taxes in section 1 is to be treated as an exception to the general tax rule laid down in section 4. (Potter's Dwarris on Statutes, page 272, 273; Endlich on Statutes, § 399.) It will further be seen that the application of the provisions of section 4 to license taxes would be an abridgement of the police powers of the state in violation of section 9 of article XV. The legislative assembly must be the unquestioned judge as to how it may properly execute the police powers of the state.

By the last sentence of section 1 of article XII, the distinction between licenses for regulation and licenses for revenue is abolished, and the entire matter of the imposition of license taxes is intrusted to the legislative assembly. The words "license tax" are to be treated as one compound word license-

tax. That compound word may not be regarded as consisting of two undivided halves—one undivided half signifying tax for regulation, and the other meaning tax for revenue. A complete and indivisible license system is established, and this is the interpretation given to the license, revenue and taxation provisions of the constitution by the framers of that instrument. The opinions of the framers of the constitution expressed during the preparation of the instrument are of great weight in its interpretation when the meaning is not clear and obvious. (*Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 558; *Martin* v. *Hunter's Lessee*, 1 Wheaton 340, 352; *State of Rhode Island* v. *Massachusetts*, 12 Peters, 657, 721.)

The construction placed upon the constitution by the legislative assembly and by the people of Montana for the past six years has been that the Montana license law is not in violation of any Constitutional provision. Cotemporaneous and legislative construction are entitled to high consideration and are controlling in doubtful cases. (Endlich on Statutes, § 357, and cases cited; Endlich on Statutes, § 527; Sutherland on Statutory Construction, § 307.) The strongest evidence that the license law has never been regarded as in violation of section 4 of article XII of the constitution consists in the fact that its constitutionality has never before been judicially disputed, and has been conceded and acquiesced in by several district courts and thrice by the supreme court—once in a case where personal liberty was involved. (*Barden* v. *Montana Club*, 10 Mont. 330; *State* v. *Raymond*, 12 Mont. 226; *State* v. *Owsley*, 17 Mont. 94.)

Assuming that a license tax is a tax within the meaning of section 4 article XII, the license tax upon the person conducting the laundry business was imposed by the state for its benefit. The county is merely an agency of the state in selecting the subjects for taxation and in collecting the tax. The state receives twenty-five per cent. of the license fee and permits the county to retain the remainder. It may be said that the arrangement is in the nature of a contract or of a duty imposed for compensation. Provisions in regard to taxing by

value have no application to taxing privileges. (Cooley on Taxation (2nd Ed.) page 570; *Webber* v. *Virginia*, 103 U. S. 350; *Webber* v. *Virginia*, 33 Grat. 891; *Patterson* v. *Kentucky*, 97 U. S. 501, 503, *People* v. *Russell*, 49 Mich. 617.) The requirement of a uniform rate of assessment and taxation does not apply to licenses. (*Anderson* v. *Kerns Draining Co.*, 14 Ind. 199, 201; *Bright* v. *McCullough*, 27 Ind. 223; *Thomassen* v. *The State*, 15 Ind. 451.) "The subject presents questions of legislative policy rather than strict law." (Cooley on Taxation (2nd Ed.) 601. "Questions of mere equity in taxation are for the legislature—not for the courts." Cooley on Taxation (2nd Ed.) 171.) "The presumption is in favor of the validity of legislation." (Cooley on Taxation (2nd Ed.) 105; Cooley on Constitutional Limitation (5th Ed.) 218.) "Legislative discretion is conclusive as to objects of taxation." (Cooley on Constitution, 343, 119.) "The question whether the principle of equity has been observed, and whether there are sufficient reasons for disregarding it, is ordinarily political and cannot be answered by the courts." (1 Hare on Constitution, 298.) The California constitution contains no provision similar to the last sentence of section 1 of Article XII and for that reason the decisions in *People* v. *Martin*, 60 Cal. 155 and *County of Eldorado* v. *Meiss*, 100 Cal. 272 are not applicable to the case at bar.

II.    The license tax imposed upon defendant was authorized in the exercise of the police powers of the state. The constitution recognizes the police powers of the state, and commands that they shall never be abridged. (Constitution Article XV, § 9.) Every calling, trade or occupation through which the health, morals, comfort or good order of the people may be affected is subject to police regulation. (Prentice on Police Powers, page 12; *Webber* v. *Virginia*, 103 U. S. 348; *Kidd* v. *Pearson*, 128 U. S. 1, 26.) An ordinance prohibiting washing and ironing in public laundries and wash houses within defined territorial limits from 10 p. m. until 6 a. m. is purely a police regulation. (*Barbier* v. *Connolly*, 113 U. S. 27; *Soon Hing* v. *Crowley*, 113 U. S. 703.) The right to im-

pose a license tax under the police power is given without section 1 of article XII, and it is again given in that section. In that section the right to license for revenue is also given. The two rights are inseparably blended, and the scheme for license taxes is absolutely removed and separated from the scheme for taxing property. So the sections in regard to levying or assessing and collecting taxes have no application to license taxes.

III. From the authorities already cited it appears that the classification of the laundry business is such as the legislative assembly had power to make. It also clearly appears that a license tax is not a tax within the meaning of section 4 of article XII of the constitution. Any charge of improper discrimination or lack of uniformity has already been fully answered by the opinion of this court in *State ex rel. Sam Toi v. French,* 17 Mont. 54.

*Thomas E. Harvey,* for Respondent.

Sections 4040 to 4051 and sections 4079 and 4080 of the Political Code are in conflict with and contravene the provisions of sections 1 and 4 of article XII of the constitution. By reference to this article of the constitution it will be observed that section 1 refers to state revenues; sections 2 and 3 to exemption and taxation of mining claims; section 4 is a limitation, upon the power of the legislature, in reference to revenues and the remaining sections of the article treat of other limitations of the taxing power. The rule of law is too well settled to need a citation of authorities that the whole of a section must be construed together and not separate clauses of the section. (Sutherland on Statutory Construction, page 316.) Section 1 of article XII treats solely upon ``the necessary revenue for the support and maintenance of the state.'' It provides that ``the levy'' shall be `` a uniform rate of assessment and taxation.'' The framers of the constitution anticipating and realizing that the amount of revenue which might be raised and collected by the state by this method under the

restrictions contained in section 9 of article XII, relating to the rate of taxation, might not be sufficient to meet "the necessary revenue for the support and maintenance of the state," and in the closing clause of section 1 provide "the legislative assembly may also impose a license tax upon persons and corporations doing business in the state." Different sentences in the same section are to be referred respectively to other sentences to which they relate. (Endlich on Statutes, page 585.) And this last clause of section 1, by the use of the word *also*, refers to the sentence preceding. The word *also* takes the place of the words "for the support and maintenance of the state if they deem it necessary." "The whole law-making power of the state," which is not expressly or impliedly withheld by the constitution, is committed to the legislature. They have unlimited power in regard to legislation, except where restrained by the written constitutions. (Cooley on Constitutional Limitations, page 105, and numerous authorities cited therein.) The legislative assembly, were this clause eliminated from the constitution, would have authority to "impose a license tax upon persons and corporations doing business in the state," for there is no restriction upon the authority of the legislative assembly unless one is imposed in the constitution. (Cooley on Taxation, page 570; Desty on Taxation, vol. 1, page 302; *City of Newton* v. *Atchinson*, 3 Am. & Eng. Corp. Cases, 447.) The last clause of section 1 of article XII was unnecessary for the purpose of conferring authority upon the legislative assembly.

To determine the meaning of the language used in section 4 of article XII, we need only reach a conclusion of the meaning of the word *taxes* as used in this section. Section 4 is a limitation upon the power of the legislative assembly. After providing for the revenue necessary for the state, article XII then proceeds, in section 4, to place a limitation upon the legislative assembly. The word *tax* means a burden-charge imposed upon persons or property to raise money for public purposes. (1 Desty on Taxation, page 1; Cooley on Taxation, page 1.) Is a license or license fee a tax as provided in the

sections of the Political Code under which the action is sought to be maintained?    "A license fee is a tax sometimes, and for some purposes, it is not a tax."    (*State ex rel. Sam Foi* v. *French*, 17 Mont. 57.)    Licenses are levied for two purposes: First, for revenue; second, for regulation, and are sustainable on either or both grounds.    (Cooley on Taxation, page 572.) License fees are taxes and means of exercising the taxing power of the state when revenue is the main purpose for which they are imposed.    (1 Desty on Taxation, page 305; Cooley on Taxation, page 572; Cooley on Constitutional Limitations, pp. 201, 611; Dillon on Municipal Corporations, § 93, 609; *Santa Barbara* v. *Stearns*, 51 Cal. 499; *People* v. *Martin*, 60 Cal. 153; *County of Eldorado* v. *Meiss*, 100 Cal. 272; *State* v. *Moore*, 18 S. E. Rep. 342; *People* v. *Naglee*, 52 Am. Dec. (note), page 331; *Hynes* v. *Briggs*, 29 Am. & Eng. Corp. Cases 561; *Ward* v. *Maryland*, 12 Wall. 418; *Mayer* v. *Roth*, 29 La. Ann., 261; *Parish* v. *Levy*, 23 Am. & Eng. Corp. Cases 587.)    Section 1 of article XII designates these charges as a license tax.    Every section of the Political Code so designates the charges sought to be collected.    Section 1 of article XII uses the language "impose a license tax."    The verb used is *impose*.    The principal word is *tax* and the term *license* simply qualifies and describes it.    To say that the words "license tax" are to be treated as the compound word, license-tax, is to violate all rules of grammatical construction, and contrary to the decisions and definitions of the terms as given by the courts.    Assume that appellant's position, that the words "license tax" should be treated as a compound word, to be correct, then apply the well-known rule of grammatical construction, viz :    That where a compound word is composed of two nouns, the first is to be considered a qualification of the second.    For the purpose of obtaining a proper construction of the last clause of section 1 article XII, the application of this rule bears out respondent's position, that the word *license* is descriptive of and qualifies the word *tax*.    (*City of Newton* v. *Atchison*, 3 Am. & Eng. Corp. 452.)

DE WITT, J·—Does section 4 of Article XII of the consti-

tution prohibit the legislature from passing a law such as section 4079, Political Code of 1895, imposing a license tax upon persons and corporations doing business in the state, when part of the proceeds of such license tax goes to the county; and can such license tax be imposed only by the county, which is part recipient of the funds collected in pursuance of such statute? This important question could have been reached in the case of *State ex rel. Sam Toi* v. *French*, 17 Mont. 54. It was within our contemplation at the time of writing that opinion, but the question was not mentioned or argued by counsel, and was therefore reserved. It has since engaged the attention of several of the district courts, and of many of the most distinguished members of the bar in the state. The result is that it has been thoroughly briefed and argued at this time by eminent counsel on both sides.

We are sensible of current affairs about us, and cannot but be aware that declaring section 4079, Political Code, to be unconstitutional, is the losing, for a considerable period of time, of an immense revenue; but we are obliged to close our minds to such considerations. As Mr. Justice Hunt said in *State* v. *Mitchell*, 17 Mont. 67 : "It were far better at this time, in the early history of this new state, that a legislative act be declared invalid than that precedent be set by which plain provisions of the constitution be nullified by loose and questionable interpretations of our fundamental law. (*State ex rel Woods* v. *Tooker*, 15 Mont. 8.)

And in the matter before us it is better that we suffer all the inconveniences of a present loss of revenue than that we let go of the constitution for the sake of relief from temporary distresses. The argument *ab inconvenienti* must be excluded from all control over the decision.

But, on the other hand, we must keep in mind another rule of constitutional construction. Judge Cooley, in his Constitutional Limitations, said, in speaking of Chief Justice Shaw : " It has been said by an eminent jurist that when courts are called upon to pronounce the invalidity of an act of legislation, passed with all the forms and ceremonies requisite to give

it the force of law, they will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light upon the subject; and never declare a statute void unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt. A reasonable doubt must be solved in favor of the legislative action, and the act be sustained.'' (Cooley on Constitutional Limitations, 182.)

Judge Cooley also quotes the following from Chief Justice Marshall in *Fletcher* v. *Peck*, 6 Cranch. 128 : "The question whether a law be void for its repugnancy to the constitution is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station could it be unmindful of the solemn obligation which that station imposes; but it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other.''

He quotes further from Mr. Justice Washington, as follows: "But if I could rest my opinion in favor of the constitutionality of the law on which the question arises on no other ground than this doubt so felt and acknowledged, that alone would, in my estimation, be a satisfactory vindication of it. It is but a decent respect to the wisdom, the integrity and the patriotism of the legislative body by which any law is passed to presume in favor of its validity until its violation of the constitution is proved beyond all reasonable doubt.'' See, also, Endlich on Interpretation of Statute, § 178.

Therefore, with these principles before us, and deeply sensible of the importance to the state of this decision, we approach its consideration with the sentiment that we must be at least fairly satisfied of the unconstitutionality of the license law before we so declare it.

The legislature has full power to enact a license law, unless it is forbidden by the constitution. In the case of *State* v. *French*, *supra*, after stating the common learning as to the difference between the constitution of a state and that of the United States, we said: ''A state legislature is not acting under enumerated or granted powers, but rather under inherent powers, restricted only by the provisions of this sovereign constitution. We therefore inquire whether our constitution restrains the legislature from enacting such a law as sections 4079, 4080, Political Code.'' We make the same inquiry now.

Article XII of the constitution treats the subject of revenue and taxation. As observed by both counsel in this case, this article provides two systems of raising money. Without intending to be now wholly technical in the use of words, we may describe them as (1) the taxation system, and (2) the license system. We use these terms now simply for convenience, and not as an expression of an opinion in advance as to whether this license is a tax or not. If the legislature sees it, all revenues may be raised by taxation. Taxation is the security for the debts and expenses. The license system is a further provision. As exigencies arise, or do not arise, or cease to exist, the license system may be, or need not be, resorted to. That system is elastic and pliable, and can be suited to circumstances.

The important question in this case is, what restraint, if any, is placed upon the legislature in creating a license system? Before examining this question, we will notice that which appears in contrast; that is to say, the restrictions which are placed upon the power of the legislature as to taxation. They are very many. They are an inheritance of our history. We will review some of them. The rate of assessment and taxation shall be uniform, under such regulations as secure a just valuation for taxation of all property, etc. (Article XII, § 1.) Liberal exemptions are provided for. (*Id.*, § 2.) Mines and mining claims in the state are liberally protected from what might be, perhaps, deemed excessive taxation. (*Id.*, §

3.)   The valuation of the property for taxation for any town
and school purposes shall not be greater than the valuation for
state and county purposes.   (*Id.*, § 5.)   The taking of private
property for corporate debts of public corporations is guarded
against.   (*Id.*, § 8.)   Provision is made for maximum rate of
taxation for state purposes.   (*Id* , § 9.)   All state taxes shall
be paid into the state treasury, and shall not be drawn out but
in pursuance of specific appropriations made by law.   (*Id.*, §
10.)   Taxes shall be levied and collected by general laws and
for  public purposes only, and shall be uniform upon the same
class of subjects, within the limits of the authority levying the
tax.   (*Id.*, § 11.)   It does not seem necessary to go further in
citing the limitations put upon the power of taxation.   The
whole of Article XII treats this subject of limitation with
great care.   In almost every section can be found prohibi-
tions or limitations upon the legislative power as to taxation.

But the license system of raising revenue and license taxes
are mentioned by name in only one place in the constitution.
That is the last sentence of section 1, which says :   "The
legislative assembly may also impose a license tax, both upon
persons and upon corporations doing business in this state."
With that utterance the constitution leaves the subject; that is,
as far as any direct language is to be found.   The license tax
is not even controlled by the equality and uniformity require-
ments of the constitution.   (*State* v. *French, supra.*)

But, while the question of license taxes is not mentioned, in
terms, elsewhere in the constitution, the defendant has pre-
sented a very able argument to the effect that the last sentence
of section 1, Article XII, and also section 4, while not so pro-
viding in direct language, must be read and interpreted to the
effect that the legislature is indeed prohibited from imposing
a license tax, the proceeds of which, or part of the proceeds
are to go to the county.   His first argument is found in the
use of the word "also " in the last sentence of section 1.   He
contends that the word carries over into the sentence where it
occurs the idea expressed in the sentence which precedes it.
That is to say, that when the section says that the legislativ

assembly may *also* impose a license tax, etc., it means that it may also impose such license tax for the support and maintenance of the state; and therefore that it cannot be imposed by the legislature partly for the support and maintenance of a county. But we do not think that the word "also" necessarily or reasonably has such meaning. It appears to us to be nothing more than a conjunctive, perhaps connecting the two sentences. It has about the same significance as "furthermore." Webster's International Dictionary gives the following definitions of the word "also:" "In addition; besides; as well; further; too. 'Lay up for yourselves treasures in heaven; * * * for where your treasure is, there will your heart be also.' Matthew vi., 20, 21." The Century Dictionary gives these definitions: "In like manner; likewise; in addition; too; further. 'In fact, Mr. Emerson himself, besides being a poet and a philosopher, was also a plain Concord citizen.' Holmes on Emerson. 'This ye knowen also well as I.' Chaucer's Canterbury Tales." The simple reading of the whole section, to our minds, is that "the necessary revenue for the support and maintenance of the state shall be provided," etc., "and, in addition to this, and furthermore, the legislature may impose a license tax," etc. The use of the word "also" is to simply connect the ideas of the two systems of revenue mentioned in the section. It introduces the creation of the second system, to wit, the license system. In this sentence the license system first appears, and the sense of the whole section is simply that "there shall be the taxation system, and, furthermore, or also, the license system." Any common illustration of the use of the word "also," as employed in daily life, demonstrates that it does not carry over into the sentence where it is used all of the ideas expressed in the preceding sentence. One may say: "This morning I shall go to the statehouse for the purpose of arguing a case before the supreme court. I shall also stop at the county courthouse." The word "also" by no means conveys the idea that the speaker intends to stop at the latter place for the same purpose which called him to the former.

We are of opinion there is no real merit in defendant's contention as to the use of this word "also."

Therefore, having passed this branch of the contention, there are no such limitations upon the power of the legislature as are contended for by the defendant, unless they are found in section 4 of Article XII. We will examine that section in a moment. We pause at this point to suggest another matter, and that is, to examine the opinions of the framers of the constitution, which they recorded during the preparation of this article XII. Such opinions may be examined as tending to show the intention. This was done in *Pollock* v. *Trust Co.*, 157 U. S. 429, 15 Sup. Ct. 673, popularly known as the "Income Tax Case," in which Mr. Chief Justice Fuller said: "We inquire, therefore, what, at the time the constitution was framed and adopted, were recognized as direct taxes? What did those who framed and adopted it understand the terms to designate and include?" The learned Chief Justice then went into an extensive examination of the history of the country, and the debates in the constitutional convention of the United States.

We have consulted the proceedings and debates of the constitutional convention of this state at page 1325 *et seq.*, as filed in the office of the secretary of state. There was an earnest debate over section 1, Article XII, and many opinions were forcibly expressed that the state should not adopt a license system at all. It was also proposed to amend the last sentence of section 1, Article XII, to read as follows: "The legislative assembly may also impose a license tax for the regulation of the sale of intoxicating liquors and other occupations requiring police supervision, both upon persons and upon corporations doing business in the state, and no license shall be imposed for any other purpose." The proposed amendment was defeated. The last member who spoke upon the question was the Honorable T. E. Collins, chairman of the committee on finance, and who was also chairman of the same committee in the old constitutional convention of 1884. He said that it would be safe to leave this matter to the legislative assembly.

The sentiment of the convention was to this effect. So, instead of putting restrictions upon the power of the legislature as to licenses, as was done as to taxes, the constitutional convention deliberately, and after earnest debate and consideration declined to do so.

Therefore, with all the evidence, both intrinsic and extrinsic, that the constitution intended to and did carefully limit the legislative power as to taxation, and the total lack of evidence that it was the intention to so limit legislation upon the subject of licenses, may the language of section 4 be construed as a prohibition upon the legislature to impose a license tax for county purposes?

In the first place, if section 4 is such a prohibition, then there seems to us to exist a repugnancy between that section and the last sentence of section 1. The latter says broadly that the legislature may impose a license tax upon persons and corporations, etc. There is no qualification upon this power found in section 1. The power, as we have above construed section 1, is not in that section confined to imposing the license tax for state purposes only. This unlimited power being given directly by section 1, and deliberately, as the debates show, then, if we are to find it afterwards limited by section 4, the words of section 4 to such effect should be clear. (Cooley on Constitutional Limitations, above cited.) We do not think it is clear, and we will point out the reasons for such opinion.

Of course, if the words "levy taxes," used in section 4, mean "license taxes," then the prohibition contended for by the defendant exists; and if those words do not mean "license taxes," the prohibition does not exit. In either event it is, in our opinion, immaterial whether the license tax is for regulation or for revenue, and the distinction in license fees, as to whether they are for regulation or for revenue, is not important in the case. Even if the license tax be for revenue (which it probably is,) and if it should, therefore, be construed to be a tax as that term is used in the cases distinguishing between a tax and a license fee for regulation, it is, in any event, a license tax provided for by the constitution, whether

imposed for either purpose. It is therefore constitutional for either purpose, unless, of course, license taxes were within the contemplation of the framers when they used the words "levy taxes" and "assess and collect taxes" in section 4. The use of several words in Article XII is, to our mind, important. The article, in speaking of ordinary taxation and taxes, uses the words "levy," "assess," and "rate." In the only place in the article where license tax is mentioned, the word is "impose." The former words were apt in speaking of taxes, and the latter in our opinion, is appropriate in describing licenses. As to the words "assess," "rate," and "levy," we note the following definition from standard dictionaries:

"Assess: Taxes in respect of land and houses are calculated with reference to the estimated value of property, which is arrived at by a process called 'assessment.'" (Rap. & L. Law Dict.)

"Assess: (2) To adjust or fix the proportion of a tax which each person liable to it has to pay; to apportion a tax among several; to distribute a taxation in a proportion founded on the proportion of burden and benefit. (3) To place a valuation upon property for the purpose of apportioning a tax." (Black, Law Dict.)

"Assess: To set, fix, or charge a certain sum upon, by way of tax; as to assess each individual in due proportion." (Cent. Dict.)

"Assess: (1) To rate or fix the proportion which each person is to pay of a tax; to tax; to adjust the shares of a contribution by several persons towards a common object, according to the benefit received; to fix the value or the amount of a thing; to determine by rules of law a sum to be paid; to rate the proportional contribution due to a fund; to fix the amount payable by a person or persons in satisfaction of an established demand." (And. Law Dict.)

"Rate: It sometimes occurs in a connection which gives it a meaning synonymous with 'assessment'; that is the apportionment of a tax among the whole number of persons who are responsible for it, by estimating the value of the taxable prop-

erty of each, and making a proportional distribution of the whole amount.   Thus we speak of 'rating' persons and property.''    (Black, Law Dict.)

"Rate :   A sum assessed as a tax; in England, a local tax; as the county, the borough, the poor rate.   May apply to the percentage of taxation, or to the valuation of the property.''   (And. Law Dict.)

"Ratable :    'Ratable estate,' within the meaning of a tax law, is a taxable estate.''    (And. Law Dict.)

"Levy :   To raise, execute, exact, collect, gather, take up, seize.   Thus, to levy (raise or collect) a tax; to levy (raise or set up) a nuisance; to levy (acknowledge) a fine, to levy (inaugurate) war; to levy and execute,—i. e. to levy or collect a sum of money on an execution.''    (Black, Law Dict.)

"Levy :   (Law) (1) To seize or take (property) by virtue of a judicial writ thereunto commanding.   (2) To impose or assess (a tax) on property, and collect it under authority of law.''   (Stand. Dict.)

These definitions all carry the popular understanding of the words.   They are appropriately used when speaking of taxation, and, we believe, with the scholarship, learning, and ability which were present in the constitutional convention, they were deliberately used.   They involve the ascertaining of values and fixing taxes in proportion thereto, and are used all through article XII, in regard to taxes and taxation.   See sections of the article.   But none of these words are used in the last sentence of section 1, Article XII, where the license tax is provided for.   There the word is "impose.''   That word is derived from the Latin word "*imponere*,'' meaning literally "to lay upon.''   Therefore we find throughout the whole of article XII distinctive words used in speaking of the taxation system and the license system.   Then we come to section 4, which defendant claims refers to licenses.   There the words are "levy '' and "assess,''—the same words always applied in the article to the subject of taxation strictly.   "Impose,'' the word adopted in treating of license taxes, is not used.   It is deliberately omitted from section 4.   Before the

constitution was finally adopted, a committee was appointed, and acted upon the subject of "revision and phraseology." Therefore, with all the debate in the convention, and with a final technical and literary revision of the constitution, we are of opinion that the use of the words "assess," "levy," and "rate" as to the one subject, and "impose" as to the others, is significant. Such words seem to express an intent that section 4 should refer to taxation strictly and not to licenses. In any event, it is by no means clear to us that the intent of section 4 was to refer to licenses; and, if the intent is not clear, we cannot put such construction upon it as will nullify the law under consideration. (Cooley on Constitutional Limitations, above quoted.)

Great importance is attached by the defendant to the case of *People* v. *Martin*, 60 Cal. 153, and that case is claimed by him to be applicable to the question now before us. The section of the constitution of California which it is urged is practically the same as our section 4, Article XII, is section 12, Article XI. It reads as follows: "Section 12. The legislature shall have no power to impose taxes upon counties, cities, towns or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes."

The case of *People* v. *Martin* was an action to recover a license tax by reason of the defendant carrying on the business of selling goods. It was brought under section 3360 of the Political Code of California, which was a portion of the license law enacted by the legislature of California before the adoption of the present constitution of that state. The California court held that said license law was unconstitutional, by reason of section 12, Article XI, of the constitution. Mr. Justice Ross, in delivering the opinion, said: "The important question in this case is whether or not the word 'taxes,' as used in this section of the constitution, includes license taxes; for, if it does, the provisions of the Political Code imposing and

providing for the collection of the license tax here in question are clearly inconsistent with this section of the constitution, and therefore inoperative by virtue of section 1 of Article XXII of the same instrument. That the license fees imposed by the provisions of the Political Code were imposed mainly, if not solely, for the purposes of revenue, does not admit of doubt; and, where that is the case, they are, in effect, taxes. (Cooley on Taxation, pp. 396, 397; 2 Dillon on Municipal Corporations, § 768.) Indeed, the statute itself designates the charge as a license tax. (Political Code, § 3359.)

. But are they 'taxes' within the meaning of section 12 of Article XI of the constitution? We are of the opinion that they are. It is clear that that section is not limited to taxes upon property, for by its express language the legislature is prohibited from imposing taxes upon the inhabitants of counties, cities, towns or other public or municipal corporations, as well as upon their property, for city, county, town or other municipal purposes. The defendant is an inhabitant of the county of Santa Cruz, engaged in the business of selling goods, wares, and merchandise. The tax imposed upon him, and which it is proposed to collect, was undoubtedly imposed for county purposes; for, as already observed, the statute authorizing it required the tax, when collected, to be paid into the county treasury for the use of the county general fund. The power to impose such taxes for such purposes, in our opinion, no longer remains with the legislature; but the constitution expressly gives it the power, by general laws, to vest in the corporate authorities of the counties, cities, towns or other public or municipal corporations, the power to assess and collect taxes for those purposes.''

But the important distinction between the California constitution and ours, and the California decision and that which we intend to make, is that there is wholly absent from the California constitution a provision like the last sentence in section 1, Article XII, viz: "The legislative assembly may also impose a license tax, both upon persons and upon corporations doing business in the state." This sentence we have endeav-

ored to construe above, and the construction which we place upon it, and the fact of its absence from the California constitution, render, in our opinion, the California decision inapplicable. Further than that, the California decision was not thoroughly considered, and was delivered by a divided court. The California constitution upon the subject of revenue made no such distinctions between the words " impose," "levy," "assess" and " rate " as we find to be clearly made in the constitution of Montana. It did not, as does ours, specially apply the one word to license taxes, and use the other words in referring to taxation strictly speaking. It cannot be argued that the prohibitory section in our constitution is borrowed from California, because, by comparing the language of the two, it is seen that they are different. See the two sections above quoted. The California prohibitory section uses the word "impose; " ours uses the word "levy." But the great distinction between the two constitutions, and the question of prohibition as contained in them, is in that last sentence of section 1 of our Article XII, which we have heretofore fully discussed.

Furthermore, much is made by the defendant of the use of the word "inhabitants" in our section 4. He argues that when the section says, "shall not levy taxes upon the inhabitants or property," the word "inhabitants" means "persons." The same word is used in the California constitution, and the decision of *People* v. *Martin* turns largely upon that word. (See citations from that case, *supra.*) Defendant's contention is that the word "inhabitants" means "persons," as distinguished from property, and that section 4 contains both words, viz.: "inhabitants" and "property," and therefore the prohibition is on both, as to levying taxes upon property and upon persons; and that the only kind of tax which could be levied upon persons would be the license tax, which is personal, while the tax upon property is not personal; and that, therefore, the use of the word "inhabitants" can mean nothing but a prohibition against the legislature levying the only kind of a personal tax, which is a license tax. This

argument cannot be maintained, for this reason: that the distinction which the defendant seeks to make as to levying or assessing or imposing taxes upon persons or property is more apparent than real, if, indeed, it is even apparent. The words "persons" and "property" are sometimes used indiscriminately, even in instruments of the gravest importance and dignity. But the fact is that all taxes are levied upon persons, and not upon property. It is the person that is taxed or licensed. In case of taxation, strictly speaking, the property which the person owns is used to determine the amount of the tax which he shall pay; but it is the person who, after all, pays the tax, and not the property. The person is liable, and the property, in addition to being the means of determining what the person shall pay, is also a security for its payment.

Upon this subject Judge Grover, of New York, said in *Rundell* v. *Lakey :* "It is, I think, apparent from the various provisions of the statute, that in respect to both real and personal property owned by a resident of the town or ward where the former is situated, the tax is imposed upon the person of such owner on account of the ownership of such property, and his liability to such tax is conclusively fixed by the completion and delivery of the roll. The counsel for the appellants concedes that this is true as to personal property. I can see no substantial reason for a distinction between an assessment for real or personal property against an individual. Both are alike assessed to the owner. The tax is in both cases imposed upon the owner. Provision is made in both for the collection of the tax from the property of the owner by the collector of the town or ward." (40 N. Y. 516.)

It was also said in *Everson* v. *City of Syracuse,* 29 Hun. 486, by Judge Haight, then of the supreme court, and now of the court of appeals, in referring to *Rundell* v. *Lakey, supra:* "In that case the conveyance was made after the assessment, and before the tax was levied. The question was as to which of the parties was liable for the tax, the grantor or grantee. It was in that case held that the collector was not only authorized, but it was his duty, to collect the tax, if not otherwise

paid, by seizing and selling the goods of the person against whom the tax has been assessed, or any goods in his possession; that the person against whom the tax was assessed was primarily liable; that the tax levied is not a tax imposed upon the land, but that it is imposed upon the person on account of his ownership of the land, and that he is primarily liable for the payment of it; that the tax when levied, simply becomes a lien upon the land.''

We take the following from *Green* v. *Craft*, 28 Miss. 70 : '' The term ' taxes,' it is said, ' includes all contributions imposed by the government upon individuals for the service of the state.' The individual, and not his property, pays the tax. The property is resorted to for the purpose of ascertaining the amount of the tax with which the owner must be charged, and for the purpose of enforcing payment, when the owner shall be legally in default in paying at the time stipulated by law.'' (See, also, Cooley on Taxation (2nd Ed.) page 476.)

It, therefore, being true that it is the person that is taxed, there seems to be no particular significance in the use of the two words ''inhabitants'' and ''property'' in section 4, Article XII, of the constitution. While these two words are used, the subject matter is the same. And if the section refers, as we have endeavored to show that it does, to taxation of property, it was not important that the section uses the words ''inhabitants'' as well as '' property,'' for the result is the same, and the taxation referred to meant a property tax; that is to say, a tax upon a person, levied upon the basis of the property owned by him.

Another argument in favor of the view that it was the intention of the constitution to commit the subject of license taxes to the legislature may perhaps be found in the fact of legislative construction. Ever since the adoption of the constitution, the legislature, either by allowing old laws to remain upon the statute books, or by enacting new ones, has recognized the principle that the subject of license taxes is for the legislature. The business of the state has been conducted

upon this principle during its whole history. We mention this matter, not as of great importance, but as entitled to some slight consideration. As noted by Judge Cooley in the citations from eminent jurists given in the earlier part of this opinion, it is not upon slight or doubtful considerations that a court will declare that the legislature has disobeyed the constitution.

Another matter of slight importance, but tending in the same direction, is the fact that this license system has been in this court several times, and, while the question of its constitutionality has never been raised in any way, three decisions have been made which recognize it as a portion of the body of the state law, viz: (*Barden* v. *Club*, 10 Mont. 330; *State* v. *Raymond*, 12 Mont. 226; *State* v. *Owsley*, 17 Mont. 94.) All of those cases were presented by very able counsel, and any one of them could have been determined upon the alleged unconstitutionality of the license-tax law, if the question had been raised. We do not, however, present this matter as one of any particular weight, for it is not entitled to such consideration.

There are a few other matters which have been mentioned as reasons for sustaining the demurrer to this complaint. But little has been made of them by counsel, and we do not think even the respondent regarded them as important. We think the additional points so made are not well taken, but will not discuss them. The great question in the case, and that upon which both counsel rested their whole contention, is the constitutional matter which we have decided. That matter, after mature deliberation, we consider clear. Furthermore, we consider it absolutely clear that the unconstitutionality of the law in question is not so apparent as to justify this court in declaring the license law void. The judgment of the district court is reversed, and the case is remanded, with directions to overrule the demurrer, and proceed with the case.

*Reversed.*

PEMBERTON, C. J., and HUNT, J., concur.