HALE, APPELLANT, *v.* COUNTY TREASURER OF MINERAL
COUNTY, RESPONDENT.

(No. 6,268.)

(Submitted February 18, 1928.  Decided March 17, 1928.)

[265 Pac. 6.]

*Taxation—License Tax on Livestock Brought into State for*
*Grazing Purposes — Invalidity of Statute — Constitution —*
*Classification of Subjects—Arbitrary Discrimination Between*
*Subjects of Same Class.*

Statutes—Rules for Determining Constitutionality.
1.  In passing upon the constitutionality of a statute courts must
indulge every presumption in favor of its validity, the question
being not whether it is possible to condemn but whether it is
possible to uphold the Act; they will not declare it invalid unless
its unconstitutionality is shown beyond a reasonable doubt, and if
two constructions are possible, one of which will result in its
constitutionality and the other in its invalidity, they will adopt
the former.

Taxation—Taxes Levied Against Person, not Property.
2.  All taxes are levied against the person, not against the prop-
erty.

Same — License   Taxes — Constitution — Classification   of   Subjects —
Arbitrary Discrimination Between Subjects of Same Class not Per-
missible.
3.  Though the provision of section 11, Article XII, of the Consti-
tution, requiring uniformity in taxation, does not apply to the license
system of taxation and the state is not required to tax all occu-
pations equally or uniformly, but may tax certain classes and leave
others untaxed, such taxes must be uniform upon the same class
of subjects, and in imposing them it may not resort to unreason-
able or arbitrary discrimination.

Same — Classification of Subjects for License Taxes—When Tax Uni-
form.
4.  A proper classification of subjects for the purpose of imposing
license taxes implies that there exist real differences as between the
subjects constituting the different classes and excludes the idea of
arbitrary selection, and a license tax is uniform when it is equal
upon all persons belonging to the described class upon which it is
imposed.

1.  See 23 Cal. Jur. 757, 783; 25 R. C. L. 999–1001.
3.  See 16 Cal. Jur. 234; 17 R. C. L. 507.
4.  Classification of subjects as affected by constitutional require-
ment as to uniformity, see note in 1 Ann. Cas. 638.  See, also, 16 Cal.
Jur. 234; 24 Cal. Jur. 130; 17 R. C. L. 509, 513.

Same — Statute Imposing License Tax upon Livestock Brought into State for Grazing Purposes, Held Invalid as Arbitrary.

5. *Held,* under the above rules, that Chapter 101, Laws of 1927, by which a license tax is imposed on all livestock coming into the state after March 1, "to graze for any length of time whatsoever," thus excluding livestock brought in for any other purpose, as, for instance, for the purpose of being fed in pens, is so arbitrary and unreasonable in its classification as to render it void.

---

[1]   Constitutional Law, 12 C. J., sec. 220, p. 788, n. 1; sec. 222, p. 795, n. 32, p. 797, n. 34, 38.

[2-4]   Licenses, 37 C. J., sec. 52, p. 199, n. 26; sec. 53, p. 200, n. 33, p. 201, n. 40.   Taxation, 37 Cyc., p. 710, n. 29, p. 714, n. 53, p. 747, n. 78, 79.

[5]   Licenses, 37 C. J., sec. 52, p. 200, n. 27; sec. 53, p. 200, n. 33.

*Appeal from District Court, Mineral County; James M. Self, Judge.*

Suit by C. S. Hale, suing on behalf of himself and others similarly situated, against the County Treasurer of Mineral County for an injunction. From a judgment for defendant, plaintiff appeals.. Reversed.

*Mr. H. J. Snively,* of the Bar of Yakima, Washington, and *Mr. W. I. Hyde,* for Appellant, submitted a brief; *Mr. Hyde* argued the cause orally.

There has been a persistent attempt in the western states to pass these migratory tax laws, to camouflage the law by calling it a license law, or inspection law, or something of that sort, but the courts, as will be seen from the references hereinafter set forth, have not let this attempted camouflage prevent them from holding such a law invalid. An arbitrary tax is not a uniform tax within the meaning of the state Constitutions, and an arbitrary tax depriving a person of property without due process of law denies to him equal protections of law, within the meaning of the fourteenth amendment of the federal Constitution, and in addition to this, the instant tax under the allegations of this complaint, which are admitted upon a demurrer, is probably a tax upon interstate commerce by a state, which is expressly forbidden by the federal Constitution. The

law in question is also an interference of the use of the government of the United States of its forest reserves.

The decisions cited below cover all of the objections which we make to the validity of the Act. (*Hayes* v. *Smith,* 58 Mont. 306, 192 Pac. 615; *State* v. *Butterfield Livestock Co.,* 17 Ida. 441, 134 Am. St. Rep. 263, 26 L. R. A. (n. s.) 1224, 106 Pac. 455; *Smith* v. *Mahoney,* 22 Ariz. 342, 197 Pac. 704; *Reser* v. *Umatilla County,* 48 Or. 326, 120 Am. St. Rep. 815, 86 Pac. 595; *Board of County Commrs.* v. *Dunn,* 21 Colo. 185, 40 Pac. 357; *People* v. *McPherson,* 76 Colo. 395, 232 Pac. 675; *People* v. *Morgan,* 79 Colo. 504, 246 Pac. 1024; *Farris* v. *Henderson,* 1 Okl. 384, 33 Pac. 380; *Graham* v. *Chautauqua County,* 31 Kan. 478, 47 Am. Rep. 501, 2 Pac. 549; *Hostetler* v. *Harris,* 45 Nev. 43, 197 Pac. 697.)

Interference with the rights of nonresidents of Montana to use public grazing lands on forest reserves: The effect of the law under consideration is to interfere with the right of the United States to use its public forests. In the case of *People* v. *McPherson,* supra, the supreme court of Colorado says that there is an implied license to use public lands of the United States so long as the government does not forbid the use, citing a number of cases; among them, *Buford* v. *Houtz,* 133 U. S. 320, 33 L. Ed. 618, 10 Sup. Ct. Rep. 305. Public lands belong to the people of all the states. (*Light* v. *United States,* 220 U. S. 523, 55 L. Ed. 570, 31 Sup. Ct. Rep. 485; see, also, *Floweree Cattle Co.* v. *Lewis and Clarke County,* 33 Mont. 32, 8 Ann. Cas. 674, 81 Pac. 398.)

*Mr. P. J. O'Brien, Amicus Curiae,* submitted a brief and argued the cause orally.

*Mr. Eugene Harpole,* County Attorney of Mineral County, for Respondent, submitted a brief and argued the cause orally.

Answering the appellant's argument that Chapter 101 of the 1927 Session Laws is unconstitutional because it denies the appellant the equal protection of law and deprives him of his

property without due process of law, it may be said that the chapter by its plain and unambiguous terms applies to every person who brings livestock into this state to graze for any length of time whatsoever, with the exception that no livestock on which the regular annual tax is levied by any county of the state shall pay the license tax. In the case of *State ex rel. Sam Toi* v. *French,* supra, it was urged to the court by the plaintiff that the laundry license tax there imposed was intended to apply only to Chinamen in its operation, as they were the only male persons who engaged in the hand laundry business. The court held that the fact that Chinamen were engaged in the hand laundry business was purely fortuitous. Counsel for the appellant embrace a line of reasoning closely akin to Sam Toi's Chinese system of logic and reach the conclusion that "the Montana legislation, by its very nature if not express terms, applies only to nonresidents, because residents alone under our original hypotheses would come within the proviso which excepts from the operation of the Act all persons who pay the regular annual tax." Sam Toi felt that only his countrymen could engage in the hand laundry business. The appellant, a nonresident, considers that only nonresidents will bring livestock to Montana for grazing purposes and that only residents of Montana will pay the regular annual tax on livestock, leaving the inference that if nonresidents have livestock in Montana on the first Monday of March they will dodge and evade the regular annual tax. If Sam Toi's conclusion was correct, the supreme court said the circumstance was purely fortuitous. The same is true of the instant case. However, the appellant's major premise is manifestly false and his conclusion erroneous from a standpoint of the law of Montana. The true rule is that all property situated in the state of Montana on the first Monday of March on any given year is assessed for that year with the regular annual tax. Section 2002, Revised Codes 1921, lays down the correct hypotheses on this point. The property of both resident and nonresident owners is included within the provisions of this Code section

and it is the situs of the property, not the domicile of its owner, that determines the levy of the regular annual tax. A resident of Montana who sends his livestock to Wyoming for winter feeding and does not bring them back to this state until after April 1 for the summer's grazing will escape the regular annual tax but comes within the provisions of Chapter 101 and must pay the license tax.

The history of the livestock industry of Montana is that resident stockmen whose ranges do not have as many animals grazing on them as can be successfully carried often go to Texas or elsewhere during the winter months, purchase as many cattle, sheep or other livestock as they desire, and, when the grass becomes abundant on the Montana ranges in late spring, bring the animals to Montana and release them to graze and fatten. The newly acquired livestock not having been in Montana on the first Monday of March has escaped the regular annual tax but will, under the provisions of Chapter 101, for the first season be as much subject to the imposition of a license tax as are appellant's sheep. In the case of *Territory of Montana* v. *Farnsworth,* 5 Mont. 303, 5 Pac. 869, the supreme court held that the equal protection of the laws is not denied to nonresident salesman where a license is exacted from him, if it appears that a like tax is exacted from resident salesmen. This is analogous to the case now under consideration. ''Whenever by the laws of a state, or by state authority, a tax, assessment, servitude or burden is imposed upon property for public use, whether it be for the whole state, or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed in the ordinary courts of justice, with such notice to the person or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law,'' however obnoxious it may be to other objections. (*Spratt* v. *Helena Power Transmission Co.,* 37 Mont. 60, 95, 94 Pac. 631.) The

bringing of this action before the courts is ample evidence that the laws of Montana provide a means of contesting the disputed Chapter 101 and hence that the same does not deprive the appellant of his property without due process of law. Further authority in support of the respondent's contention on these points is to be found in 12 C. J., at pages 1151 and 1155. ·

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The legislative assembly at its last session passed an Act purporting to impose a license tax "on livestock coming into Montana from other states, and grazing therein, providing for collection of same and distribution of such tax," and fixing a penalty for violation of the Act.

Section 1 provides that a license tax of forty cents per head on horses, mules and cattle and ten cents per head on sheep is "imposed on all such livestock coming into this state to graze for any length of time whatsoever, provided, however, that no livestock on which the regular annual tax is levied by any county of the state shall pay said license tax."

Section 2 makes it the duty of an owner, or his agent, bringing livestock into this state for grazing purposes immediately to notify in writing the treasurer of the county in which the livestock is being grazed, giving the number of the livestock and the location of the land on which they are being grazed.

Section 3 makes it the duty of the assessor to ascertain if there is any livestock from without this state temporarily grazing within his county and if so to report the number of livestock, their location, and the name of the owner or person in charge thereof to the treasurer, "who shall immediately upon receipt of such notice from the assessor or owner of such livestock," proceed to collect the sum of money due and payable from the person keeping and herding the livestock, or his agent; and in the event that it is necessary for the treasurer to collect the taxes due by distress and sale he may proceed

without any further warrant for that purpose in the same manner as is provided by law for taxes assessed upon personal property.

Section 4 provides a penalty for a violation of the Act by the owner or his agent.

Section 5 prescribes that all moneys collected under the Act "shall be divided equally between the general fund of the school district, or districts, in which the livestock is being grazed and the general fund of the county." (Chap. 101, Sess. Laws 1927, p. 342.)

The plaintiff, a resident of the county of Yakima, state of Washington, was the owner of 2,400 head of ewes which were assessed for taxation in Yakima county for the year 1927 in accordance with the laws of Washington, which provide for an assessment on the basis of the valuation of all personal property as of March 1 of each year. Plaintiff had a permit to graze sheep in the Lolo National Forest, which embraces portions of Montana and Idaho. On June 1 the ewes were loaded on cars of the Northern Pacific Railway en route to Chicago, but by an arrangement with the railway company they were unloaded in Mineral county and placed within the National Forest to graze until September 1. In their migrations it was expected that they would graze in Idaho as well as Montana. A part of the Lolo National Forest is within Mineral county and the treasurer of that county threatened to collect the license tax of ten cents per head on all the sheep in accordance with the Act by restraining and selling them, and also proposed to arrest the plaintiff for violating the law. The plaintiff, claiming that the Act is invalid and unconstitutional, brought this suit against the treasurer to enjoin him from interference. A demurrer to the complaint, interposed by the county attorney of Mineral county, was sustained, and plaintiff refusing to amend, judgment was entered for the defendant, from which the plaintiff has appealed.

The plaintiff claims (1) that the Act is void under the Constitution of Montana for the reason that the tax is not

based upon a uniform legal assessment; (2) that it is invalid
under the Constitution of the United States because (a) it
denies to plaintiff the equal protection of the laws, and (b) it
imposes a burden upon interstate commerce; (3) it is charged
that the Act is invalid because it is an attempt to regulate the
use of the public lands of the United States.

After an exhaustive search of the authorities, while no case
directly in point has been found, we are constrained to hold
the Act is invalid because it denies to plaintiff the equal pro-
tection of the laws; and none of the other objections need be
considered.  It may not be amiss to say before we proceed
with the discussion that the legislature in enacting Chapter 101,
supra, attempted to do what it failed to do in enacting Senate
Bill No. 30, approved March 14, 1901 (Sess. Laws 1901, p. 57),
which was declared unconstitutional in *Hayes* v. *Smith*, 58
Mont. 306, 192 Pac. 615.  Both Acts are directed against live-
stock brought into this state for grazing purposes.

In considering the question presented we have borne in mind
[1]  that canon of statutory construction which requires the
indulgence of every presumption in favor of the constitu-
tionality of an Act of the legislative assembly.  Every reasonable
doubt must be resolved in favor of the legislative action.  The
court must determine not whether it is possible to condemn
but whether it is possible to uphold the Act which is attacked,
every presumption being in favor of its validity.  The statute
will not be declared invalid unless, in the judgment of the
court, its unconstitutionality is shown beyond a reasonable
doubt.  (*State ex rel. Wallace* v. *Callow*, 78 Mont. 308, 254
Pac. 187; *Mills* v. *Stewart*, 76 Mont. 429, 47 A. L. R. 424, 247
Pac. 332; *State ex rel. Boone* v. *Tullock*, 72 Mont. 482, 234 Pac.
277; *Martien* v. *Porter*, 68 Mont. 450, 219 Pac. 817.)   Con-
sequently, if two constructions are possible, one of which will
result in declaring the statute constitutional and the other un-
constitutional, the court will follow the former.  (*State ex rel.
Northern Pacific Ry. Co.* v. *Duncan*, 68 Mont. 420, 219 Pac.
638; *State ex rel. Bankers' Trust Co.* v. *Walker*, 70 Mont. 484,

226 Pac. 894.) But where the Act, in the judgment of the court, manifestly violates a constitutional provision it is the duty of the court so to declare.

Section 1 of Article XII of Montana's Constitution provides: [2–4] "The necessary revenue for the support and maintenance of the state shall be provided by the legislative assembly, which shall levy a uniform rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, except that specially provided for in this article. The legislative assembly may also impose a license tax, both upon persons and upon corporations doing business in the state."

Section 11 of the same Article provides: "Taxes shall be levied and collected by general laws and for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."

In *State* v. *Camp Sing,* 18 Mont. 128, 56 Am. St. Rep. 551, 32 L. R. A. 635, 44 Pac. 516, this court, speaking through Mr. Justice DeWitt, discusses the two systems of raising revenue which are contemplated by section 1, supra. These he characterized for convenience as the "taxation system" and the "license system."

Taxes are generally classified as either taxes on property or excise taxes, although sometimes the word "excise" is not used, but instead "license," "privilege," "occupation" or the like. (Cooley on Taxation, 4th ed., sec. 1670.)

Of course, all taxes are levied against the person, not against his property. (*State* v. *Camp Sing,* supra; *Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477; *Sanderson* v. *Bateman,* 78 Mont. 235, 253 Pac. 1100.)

In the *Camp Sing Case* the court pointed out that if the legislature sees fit all revenues may be raised by taxation, and the "license system" may be or may not be resorted to. The license system "is elastic and pliable and can be suited to circumstances." Touching the "taxation system" the court said that the rate of assessment and taxation must be uniform

under such regulations as will secure a just valuation for taxation of all property (except that declared to be exempt), but that the license system is not controlled by the equality and uniformity requirements of the Constitution. In other words, the court held that section 11, supra, applies to the taxation system but not to the license system. (*State ex rel. Sam Toi v. French,* 17 Mont. 54, 30 L. R. A. 415, 41 Pac. 1078.) This holding is in harmony with the authorities generally. (Cooley on Taxation, 4th ed., sec. 1685.)

But it does not follow that in imposing a license tax the legislature may disregard the principles of uniformity and equality altogether; it may not resort to unreasonable or arbitrary discriminations. It is true that it is not required to tax all occupations equally or uniformly. (*Quong Wing v. Kirkendall,* 39 Mont. 64, 101 Pac. 250, affirmed 223 U. S. 59, 56 L. Ed. 350, 32 Sup. Ct. Rep. 192 [see, also, Rose's U. S. Notes].) In imposing a license tax, the state may tax all or it may select for taxation certain classes and leave the others untaxed. "But it is generally held that occupation taxes must be uniform upon the same class of subjects, although proper sub-classification is allowable. The rules as to classification are the same without regard to whether the imposition is a tax or a mere exercise of the police power. In order to render a classification illegal, the business discriminated against must be shown to be precisely the same as that included in the class which is shown to be favored." (Cooley on Taxation, 4th ed., sec. 1685.)

A proper classification implies that there exist real differences as between the subjects constituting the different classes, and excludes the idea of arbitrary selection. (*Northwestern Life Ins. Co. v. Wisconsin,* 247 U. S. 132, 62 L. Ed. 1025, 38 Sup. Ct. Rep. 444.)

It is within the legislative power to define the different classes and to fix the license tax required of each. All the taxpayer can demand is that he shall not be taxed at a different rate from others in the same occupation as classified by legis-

lative enactment. This seems to be the universal rule. (*State v. Stephenson*, 109 N. C. 730, 26 Am. St. Rep. 595, 14 S'. E. 385.)

"It is settled that a license tax is uniform when it is equal upon all persons belonging to the described class upon which it is imposed." (*Lacy v. Packing Co.*, 134 N. C. 567, 47 S. E. 53; *Bickett v. Tax Commission*, 177 N. C. 433, 99 S. E. 415.)

In Cooley on Taxation, fourth edition, section 259, it is said that "while perfect equality is imposible, yet these are cases where there is such glaring inequality, either intentional or otherwise, as to clearly violate the uniformity and equality rule. Let it reach all of a class, either of persons or things, it matters not whether those included in it be one or many, or whether they reside in any particular locality or are scattered all over the state. But when, for any reason, it becomes discriminative between individuals of the class taxed, and selects some for an exceptional burden, the tax is deprived of the necessary element of legal equality, and becomes inadmissible."

It is an essential requirement that the tax be equal upon all persons belonging to the class upon which it is imposed. (*Bickett v. Tax Commission*, supra.) This principle is recognized in *Quong Wing v. Kirkendall*, supra, in which this court, speaking through Mr. Justice Smith, said: "No suggestion is made that this law is not uniform as to all laundry proprietors, either on its face or in its application, except in so far as it exempts certain women, and in all other respects it appears to us to be uniform and reasonable." This statement was followed by the following quotation from *Magoun v. Illinois T. & S. Co.*, 170 U. S. 283, 42 L. Ed. 1037, 18 Sup. Ct. Rep. 594: "If the constituents of each class are affected alike, the rule of equality prescribed by the cases is satisfied. In other words, the law 'operates equally and uniformly upon all persons in similar circumstances.' "

That the Act under consideration is discriminative is plain.
[5]   This fact alone does not condemn it. (*State* v. *Loomis,*
75 Mont. 88, 242 Pac. 344.)   The question is, Is the discrimina-
tion arbitrary and unreasonable?   It seems to us that but one
answer can be made.   The Act applies only to livestock which
are brought into Montana "to graze for any length of time
whatsoever."   In other words, it is directed against what may
be termed foreign livestock.   It does not apply to livestock
brought into the state for any other purpose than to graze.
For instance, it does not apply to sheep brought into Montana
to be fed in pens.   If this be called a distinction the legislature
might, with equal reason, impose the tax upon sheep which
graze upon the public range and omit the tax upon those which
are fed Montana-grown alfalfa hay.   The Act does not, upon
its face, apply solely to nonresidents.   Apparently it applies
as well to residents who bring livestock into the state after the
first Monday of March to graze in their own fields.   "Although
the Act does not in express terms confine its operations to live-
stock brought into the state for grazing purposes after the first
Monday of March, by necessary implication it does so, and such
a construction is commanded, otherwise the entire Act would be
meaningless," as the court remarked in *Hayes* v. *Smith,* supra.

The Constitution provides that the legislative assembly may
impose a license tax upon persons and corporations doing busi-
ness in this state.   It will be admitted that plaintiff in grazing
his sheep within this state is doing business in this state; he is
carrying on the sheep business.   He would be carrying on that
business if he were feeding the sheep in pens.   In so far as the
taxing power is involved it is not perceived that there is any
basis for differentiation here.

The decision in *Hayes* v. *Smith* again is directly applicable.
In almost the precise language employed in that case we say
we are unable to perceive any distinction which can be drawn
between a flock of 2,400 ewes of a particular breed, size, de-
scription and value brought into this state after the first
Monday of March for the purpose of grazing for any period,

and a flock of the same size, breed, description and value brought into the state at the same time for the purpose of being fed in pens for the same length of time, and yet this statute assumes to render the first flock subject to the license tax, whereas the other is not. The attempted classification appears to be entirely arbitrary, and the unreasonable and unjust discrimination is apparent.

Enough has been said to demonstrate that the law cannot be upheld, and while more might be said, we shall go no further.

The judgment is reversed, with direction to the district court of Mineral county to overrule the demurrer.

*Reversed.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.