STATE ex rel. FORD, RELATOR, *v.* SCHOFIELD ET AL., RESPONDENTS.

(No. 4,005.)

(Submitted March 26, 1917. Decided May 15, 1917.)

[165 Pac. 594.]

*Statutes—Local and Special Laws—New Counties—Public Policy—Appeal and Error—Decisions of Other Courts.*

New Counties—Statutes—Local and Special Laws—Implied Repeal.

1. *Held,* that Chapter 56, Laws of 1917, creating Carter county, is not invalid as violative of section 26, Article V, of the Constitution, forbidding special legislation where a general law can be made applicable; the Act creating the county being an implied legislative determination that the general law providing for the creation of new counties (Chap. 112, Laws of 1911 and amendments) is no longer applicable under present conditions.

[As to new counties, their relation and that of their officers to old counties, see note in 20 Am. St. Rep. 626.]

Appeal and Error—Decisions of Other Courts—How to be Viewed.

2. Decisions of courts of other states are not binding upon the supreme court of this state; they are useful or persuasive, if the reasoning applied appeals to sound judgment.

New Counties—Public Policy.

3. The creation of new counties is a matter of public policy.

Original proceeding in *quo warranto* by the State on the relation of S. C. Ford, Attorney General, against T. F. Schofield and others. Proceeding dismissed.

*Mr. S. C. Ford,* Attorney General, *Mr. Frank Woody,* Assistant Attorney General, *Messrs. Walsh, Nolan & Scallon,* and *Mr. Geo. W. Farr,* for Relator, submitted a brief; *Mr. Woody* and *Mr. C. B. Nolan* argued the cause orally.

*Messrs. Jones & Jones, Messrs. Booth & Dousman, Messrs. Gunn & Rasch, Messrs. Galen & Mettler,* and *Mr. E. G. Toomey,* for Respondents, submitted a brief; *Mr. M. S. Gunn, Mr. A. J. Galen, Mr. E. S. Booth* and *Mr. Toomey* argued the cause orally.

An investigation of the decisions fails to disclose any judicial opposition to the doctrine that, in the absence of express constitutional restrictions, counties may be created, divided and

even abrogated at the sole will and pleasure of the legislature. They are so peculiarly part and parcel of the state in its civil administration, and an instrument of its sovereignty, that no court has suggested a doubt, in the absence of a plain constitutional inhibition, as to the paramount authority of the legislature in the creation of new counties. (*Markey* v. *County of Queens,* 154 N. Y. 675, 39 L. R. A. 46, 49 N. E. 71; *White* v. *Chowan,* 90 N. C. 437, 47 Am. Rep. 534; *Downing* v. *Mason County,* 87 Ky. 208, 12 Am. St. Rep. 473, 8 S. W. 264; *Kahn* v. *Sutro,* 114 Cal. 316, 33 L. R. A. 620, 46 Pac. 87; *Covington County* v. *Kinney,* 45 Ala. 176; 2 Kent Comm. 275; *Ex parte Selma etc. R. Co.,* 45 Ala. 696, 6 Am. Rep. 722; *Henderson* v. *Board of Supervisors,* 147 N. Y. 1, 30 L. R. A. 74, 41 N. E. 563; *Territory* v. *Whitney,* 17 Haw. 174, 7 Ann. Cas. 737; *White* v. *Bond County,* 58 Ill. 297, 11 Am. Rep. 65; *State* v. *Goldthait,* 172 Ind. 210, 19 Ann. Cas. 737, 87 N. E. 133; *Jones* v. *Lucas County,* 57 Ohio St. 189, 63 Am. St. Rep. 710, 48 N. E. 882; *Williamsport* v. *Commonwealth,* 84 Pa. St. 487, 24 Am. Rep. 208; *Bailey* v. *Lawrence County,* 5 S. D. 393, 49 Am. St. Rep. 881, 59 N. W. 219; *Fry* v. *County of Albemarle,* 86 Va. 195, 19 Am. St. Rep. 879, and note, 9 S. E. 1004.)

In the particular function of erecting new political subdivisions within the state, is the legislature confined to the enactment of so-called general laws? Those who would impair the plenary power of the legislature to enact either a general or a special law on any subject must point out the specific inhibition. The rule is well settled that the legislative branch of a government has full power to enact special laws unless expressly forbidden by constitutional provisions. (36 Cyc. 989; *Davis* v. *State,* 68 Ala. 58, 44 Am. Rep. 128; *National Bank* v. *Augusta Cotton etc. Co.,* 104 Ga. 403, 30 S. E. 888; *Sayles* v. *Christie,* 187 Ill. 420, 58 N. E. 480; *State* v. *Des Moines,* 96 Iowa, 521, 59 Am. St. Rep. 381, 31 L. R. A. 186, 65 N. W. 818; Cooley's Const. Limitations, 488.) And the legislature, in the absence of constitutional prohibition, may pass local laws on a subject already covered by general law. (36 Cyc. 989,

note 82; *Dudley* v. *Birmingham R. etc. Co.,* 139 Ala. 453, 36 South. 700; *Montezuma* v. *Minor,* 70 Ga. 191; *Miller* v. *Wicomico County Commrs.,* 107 Md. 438, 69 Atl. 118; *Herbert* v. *Baltimore County Commrs.,* 97 Md. 639, 55 Atl. 376.)

A law is none the less general because it prescribes conditions or imposes qualifications which cannot be met by all the people within the jurisdiction who may desire the creation of a new county. (See *State* v. *Spaude,* 37 Minn. 323, 34 N. W. 164; *Iowa R. R. Land Co.* v. *Soper,* 39 Iowa, 112; *Phillips* v. *Missouri Pacific Ry. Co.,* 86 Mo. 540; *Wheeler* v. *Philadelphia,* 77 Pa. St. 338; *Abeel* v. *Clark,* 84 Cal. 226, 24 Pac. 383; *State* v. *Parsons,* 40 N. J. L. 123, 29 Am. Rep. 210; *State Board of Assessors* v. *Central R. R. Co.,* 48 N. J. L. 146, 4 Atl. 578; *State* v. *Ellet,* 47 Ohio St. 90, note in 21 Am. St. Rep. 772, 23 N. E. 931; *State ex rel. Bray* v. *Long,* 21 Mont. 26, 52 Pac. 645.)

Judicial exposition of identical constitutional provisions establishes that save for the specific enumerations, the legislature is the sole judge of the cases where general laws can be made applicable, and that its enactment of a special law is a conclusive determination of the inapplicability of any existing general law. The Constitution leaves a discretion with the legislature to determine the case in which a special law is necessary. (*Little Rock* v. *Parish,* 36 Ark. 166, 172; *Brown* v. *Denver,* 7 Colo. 305, 3 Pac. 455; *Pennsylvania Co.* v. *State,* 142 Ind. 328, 41 N. E. 937; *State* v. *Sanders,* 42 Kan. 228, 21 Pac. 1073; *People* v. *Bowen,* 21 N. Y. 517; *Mosier* v. *Hilton,* 15 Barb. (N. Y.) 657; *Terre Haute etc. R. R. Co.* v. *Cox,* 102 Fed. 825, 42 C. C. A. 654; *Guthrie Nat. Bank* v. *Guthrie,* 173 U. S. 528, 43 L. Ed. 796, 19 Sup. Ct. Rep. 513.) The weight of authority does not stop here, but holds that the legislature is the sole and exclusive judge in determining when a general law will not subserve the purpose as well as a special Act, and that the conclusion of the legislature that a special Act should be enacted is final and conclusive, and not subject to judicial review. (*Carson* v. *St. Francis Levee Dist.,* 59 Ark. 513, 27

S. W. 590; *Wilson* v. *Board of Trustees*, 133 Ill. 443, 27 N. E.
203; *Mode* v. *Beasley*, 143 Ind. 306, 42 N. E. 727; *Chesney*
v. *McClintock*, 61 Kan. 94, 58 Pac. 993; *Edmonds* v. *Herbrand-
son*, 2 N. D. 270, 14 L. R. A. 725, 50 N. W. 970; *McGill* v.
*State*, 34 Ohio St. 228, 247; *Addington* v. *Canfield*, 11 Okl. 204,
66 Pac. 355; *Smith* v. *Grayson County*, 18 Tex. Civ. App. 153,
44 S. W. 921; *Travelers' Ins. Co.* v. *Township of Oswego*, 59
Fed. 58, 7 C. C. A. 669, reversing 55 Fed. 361; *Board of
Commrs.* v. *Vandriss*, 115 Fed. 866, 53 C. C. A. 192.)

Nor does the existence of a general law covering the subject
at the time of the passage of the special law, whose existence
is being questioned, affect the question. The fact that a pre-
ceding legislature may have considered that a general law on
the subject could be made applicable is not binding upon a
succeeding legislature. (*Indianapolis* v. *Navin*, 151 Ind. 139,
41 L. R. A. 334, 337, 47 N. E. 525, 51 N. E. 80; *Dallas* v. *West-
ern Electric Co.*, 83 Tex. 243, 18 S. W. 552; *Smith* v. *Grayson
County*, 18 Tex. Civ. App. 153, 44 S. W. 921; *Dudley* v. *Bir-
mingham R. etc. Co.*, 139 Ala. 453, 36 South. 700; *Montezuma*
v. *Minor*, 70 Ga. 191; *Miller* v. *Wicomico County Commrs.*, 107
Md. 438, 69 Atl. 118; *State* v. *Wilcox*, 45 Mo. 458.)

*Quilici* v. *Strosnider*, 34 Nev. 9, 115 Pac. 177, upholds the
enactment of a special law, changing a county seat, notwith-
standing the existence of a general law on the subject. The
opinion is by a court which assumes to determine the applica-
bility of a general or special Act in each instance as a question
of fact. While the court, nominally, contends for and appro-
priates unto itself this power, it is interesting to note its re-
fusal to interfere with the legislative determination. (See,
also, *Van Hook* v. *McNeil Monument Co.*, 107 Ark. 292, 155
S. W. 110; *Leonard* v. *American Life etc. Co.*, 139 Ga. 274,
77 S. E. 41; *People* v. *Dunn*, 255 Ill. 289, 99 N. E. 577;
*Cleveland etc. R. Co.* v. *Blind*, 182 Ind. 398, 105 N. E. 483;
*Jones* v. *McClaughry*, 169 Iowa, 281, 151 N. W. 210; *Woodall*
v. *Darst*, 71 W. Va. 350, Ann. Cas. 1914B, 1278, 44 L. R. A.
(n. s.) 83, 77 S. E. 264, 80 S. E. 367.)

As expressed in *St. Louis Southwestern Ry. Co. v. State,* 97 Ark. 473, 134 S. W. 970, 973, "the question is solely whether or not a general law can be made applicable"; but this question has already been repeatedly answered in the negative by the decisions of this court, in considering similar legislation. (*Holliday v. Sweet Grass Co.,* 19 Mont. 364, 48 Pac. 553; *State ex rel. Williams v. Mayhew,* 21 Mont. 93, 52 Pac. 981; *State ex rel. Sackett v. Thomas,* 25 Mont. 226, 64 Pac. 503.) Does it not follow that if a general law could not be made applicable to the creation of a county at the time of these decisions, such general law equally cannot be made applicable at this time? Every consideration requires that the doctrine of *stare decisis* be applied to this case, and that the former uniform decisions in this court upon the point in question should be reaffirmed. (11 Cyc. 745, note 76; *Boggs v. Dunn,* 160 Cal. 283, 116 Pac. 743.) And the foregoing for the reason that the Act of one legislature is not binding upon a future legislative assembly, and this is especially true where a question of fact is involved. (*Bloomer v. Stolley,* Fed. Cas. No. 1559, 5 McLean, 158; *Files v. Fuller,* 44 Ark. 273; *Gilleland v. Schuyler,* 9 Kan. 569; *Armstrong v. Dearborn County Commrs.,* 4 Blackf. (Ind.) 208; *Gonzales v. Sullivan,* 16 Fla. 791; *Mix v. Illinois Central Ry. Co.,* 116 Ill. 502, 6 N. E. 42; *Debolt v. Ohio Life Ins. etc. Co.,* 1 Ohio St. 563; *Brightman v. Kirner,* 22 Wis. 53; Cooley's Constitutional Limitations, 7th ed., 174–176.)

The foregoing propositions have sustained the creation of a county by special Act, notwithstanding the existence of a general law on the subject, under identical constitutional provisions; this by a court which insists that the question of the applicability of a general law is a judicial one. (See *People v. McFadden,* 81 Cal. 489, 15 Am. St. Rep. 66, 22 Pac. 851, affirmed in *People v. County of Glenn,* 100 Cal. 419, 38 Am. St. Rep. 305, 35 Pac. 302, reaffirmed in *Wheeler v. Herbert,* 152 Cal. 224, 92 Pac. 353.)

In the Constitution of Wisconsin there is a prohibition against local and special legislation locating or changing county seats.

(Sec. 31, Art. IV.)  Notwithstanding this prohibition, the right to create a county by special Act is and has been recognized in that state for fifty years.  (*State* v. *Stevens,* 112 Wis. 170, 88 N. W. 48.)

There is no question of delegated authority presented.  (*People* v. *McFadden, supra.*)  It is apparent, then, that if the legislature has not delegated its legislative power, it still retains it, and can create counties just as it did before the passage of the Act of the fourteenth legislative assembly.  The cases are collected in Ann. Cas. 1914C, at page 626, in a note to *People* v. *Kennedy,* 207 N. Y. 533, 101 N. E. 442.  Even if a question of delegated authority were presented, it is well settled that "whatever powers the legislature may delegate to any public agency for exercise, it may itself resume and exercise."  (*Dyer* v. *Tuskaloosa Bridge Co.,* 2 Port. (Ala.) 296, 27 Am. Dec. 655; *Attorney General* v. *Marr,* 55 Mich. 445, 21 N. W. 883; *Chicago & N. W. Ry. Co.* v. *Langlade Co.,* 56 Wis. 614, 14 N. W. 844; *Brand* v. *Multnomah Co.,* 38 Or. 79, 84 Am. St. Rep. 772, 50 L. R. A. 389, 60 Pac. 390, 62 Pac. 209.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

From the adoption of the Constitution in 1889 until 1911 we had no general statute for the creation of new counties, but during that period thirteen new counties were created, each [1] by special Act of the legislature.  By Chapter 112, Laws of 1911, there was written into the statutes of this state a general law of uniform operation, providing for the creation, organization and classification of new counties.  That Act was amended in 1913, and the amended Act superseded by another of the same general character, in 1915 (Chap. 139, Laws 1915). Under these Acts twelve counties were created, organized, classified and are now existing political subdivisions of the state. Without expressly repealing the general law, the fifteenth legis-

lative assembly passed Senate Bill 76 (Chap. 56, Laws of 1917) —a special Act—creating Carter county and providing for its organization and government. This Act became a law without the approval of the Governor, pursuant to section 12, Article VII, of the Constitution. The present proceeding was instituted to test the validity of the Act, and it is the contention of relator that it violates the provisions of section 26, Article V, of the Constitution. That section forbids special legislation upon any one of the thirty-four enumerated subjects, among them locating or changing county seats, regulating county or township affairs, and concludes: "In all other cases where a general law can be made applicable, no special law shall be enacted."

Assuming the mandatory and prohibitory character of this last provision, respondents insist nevertheless that it is addressed to the legislature exclusively; that whether a general law can be made applicable to any given case must be determined by the legislature from facts and circumstances as they are made to appear to it, and that the courts cannot review the evidence before the legislature, and therefore cannot overrule or reverse the legislative determination; that the enactment of a special law upon a given subject is a legislative determination that a general law cannot be made applicable to it; and that such determination must of necessity be final and conclusive. Adjudicated cases sustaining these propositions generally are cited almost without number.

The concluding sentence of section 26 above is not an absolute prohibition in the sense that the preceding section is. Section 25 is absolute in its terms. It means that under no possible set of circumstances may a law be revised or amended by reference to its title only, and any Act passed in violation of its provisions is absolutely void. The concluding sentence of section 26 does not prohibit special legislation altogether, but does seek to curtail it. It forbids special laws in all cases where general laws can be made applicable. But who shall determine whether a general law can be made applicable in any

given instance? Upon this question the decisions are in hopeless conflict, and no useful purpose can be served by reviewing them at length. The cases cited by respondents hold that the question is one exclusively for legislative determination, while cases cited by relator hold with equal emphasis that it is one for decisions by the courts. We might relieve ourselves of much work and worry by accepting one theory or the other, and, blindly following precedent, content ourselves with merely [2] citing the authorities. The decisions of other state courts are not binding upon us. They are useful or persuasive with us, or they are not, according to whether the reasoning appeals to our judgment or fails to do so. We are not at liberty to abdicate in favor of some other tribunal, but conceive it to be our duty to determine every controversy presented to us according to our own best judgment, enlightened to the utmost extent possible by the learning and experience of other courts and by textwriters who have specialized upon particular subjects.

In this instance we find ourselves unable to agree entirely with either theory established by the adjudications to which reference has been made. We have on our statute books a general law, of uniform operation throughout the state, which forbids gambling. If the legislature should be unwise enough to substitute for this law another of the same character, but which by its terms applied only to certain named counties, excluding all others, we imagine no one would hesitate to pronounce such an Act unconstitutional and void; and neither can we imagine that it could be urged with any semblance of reason that it was for the legislature to determine finally that a general anti-gambling law cannot be made applicable throughout this state. It is inconceivable that there is such a different standard of morality prevailing in different sections of the state that a police regulation of this character cannot be made to operate uniformly. Examples might be multiplied to illustrate the view that it cannot be exclusively a legislative question to determine in every instance whether a general law can be made applicable.

On the other hand, we think the theory that it is a judicial question in every instance equally fallacious. To illustrate by an extreme case: Suppose there is a county in this state, no portion of which is adapted to agriculture, but which does contain extensive grazing areas; that in the remainder of the state agricultural development has progressed to that point where a herd law is imperatively demanded, and the legislature is responsive to the demand and seeks to promote the welfare of the state by the enactment of a suitable law restraining live-stock from running at large. If the legislature ascertains that the facts are that the range county is so far bounded by mountain ranges and rivers that stock running at large therein will not jeopardize the interests of any other section, then it would seem that common sense would dictate to the lawmakers that a statute be enacted restraining livestock from running at large, but excepting from the operation of its provisions the range county. Such an Act would meet the demands of every section of the state, promote the general welfare, and infringe the rights of no one; but it would be special legislation. A herd law could be passed which would be general and uniform in its operation throughout the state, and which, in addition to promoting the interests of forty counties, would also destroy the principal industry of the one. Indeed, it is conceivable that a general law can be enacted upon any subject of legislation; but, if this be the sense in which the language is employed in the concluding sentence of section 26, then its ultimate purpose is to prohibit special legislation altogether.

We believe there are many subjects of legislation, which, from their inherent character, are subject to regulation by general laws, and that the courts are as advantageously situated as any other department of government to say so; on the other hand, there are certain subjects which may or may not lend themselves to regulation by general laws, depending upon extrinsic facts and circumstances which the Legislature is peculiarly fitted to ascertain and determine, but which the courts have no means

available to ascertain. Upon the first class of subjects, the courts can and must determine the applicability of general laws; upon the second, the legislature must be left free to act.

·The creation of new counties involves a question of public [3] policy exclusively. It would have been perfectly competent for the people, in adopting their Constitution, to have made provision that the state should be divided into the sixteen counties then in existence, and prohibited the formation of any new counties thereafter. It would have been a very unwise thing to do, and it was not done. The debates of the constitutional convention disclose an attempt to write into our fundamental law a property restriction upon the creation of new counties; but the attempt failed, and the sense of the convention, so far as it is disclosed, was in favor of the widest liberality toward growing communities aspiring to local self-government. In the creation of new counties there are certain considerations which address themselves to the legislature, common to all alike—the financial ability of the community to support county government and the effect which the withdrawal of one portion of a county may have upon the capacity of the old county to continue its organization. If these and like questions were the only ones which could arise, the applicability of a general law to the creation of new counties would seem a demonstrable fact; but they are not. In the early history of the state we had certain sections of vast territorial extent, but with small population and little taxable wealth; others with congested population and vast wealth, but with little territory tributary. In many of the states on the plains it might be possible to lay off counties with a foot rule—to follow township and range lines and achieve practical results; but in a mountainous country, with navigable streams, such as this, so simple a plan could not well be applied. The topography of the country, the accessibility of one portion to another, the lines of transportation, the stability of the community, the opportunities for growth and development, are considerations which must enter into the discussion of any plan for county organization here.

As remarked before, it was possible for the first state legislature to enact a general law for the organization of new counties. The same general law enacted in 1915 could have been enacted in 1891, but it would have been a useless piece of encumbrance upon the statute books. It would have prohibited the formation of any new counties for many years, and would have retarded the development of the state to an almost unlimited extent. It was likewise possible to enact a general law with such liberal provisions that any aspiring community in the state, then or thereafter, could have secured separate county government. But the possibility of enacting a general law for new county organization is not the test prescribed by the Constitution. In order to bar special legislation, the general law must be applicable, and in our opinion that word was employed in a very general and comprehensive sense. The framers of our Constitution were not idle dreamers. They were eminently endowed with practical common sense. Their discussions in convention disclose a fixed purpose to avoid legislating, and to confine their efforts to the enunciation of those fundamental principles deemed essential to the stability and general welfare of the commonwealth. They recognized that the Constitution was intended to be, not a grant, but a limitation, of power, and they left the legislative department free to exercise its lawmaking function, subject only to such limitations as were deemed necessary to be imposed. They wrote with peculiar perspicuity and terseness, and never intended their language to be given a strained or unreasonable interpretation. When they referred to a general law as applicable to a particular case, they meant a law in its practical operation adequate to the purpose for which it was intended. In this sense, whether a general law can be made applicable to the creation of new counties depends upon a multitude of extraneous facts and circumstances, which the legislature, operating without the fixed rules of judicial procedure, is peculiarly qualified to ascertain and pass upon, but which the courts can but inadequately ascertain, if at all.

Our conclusion upon this branch of the case is that with respect to the particular subject—the creation of new counties—

it was peculiarly the province of the legislature to determine at all times between 1889 and 1911 whether a general law could be made applicable, and that the failure or refusal to enact a general statute upon the subject is tantamount to a decision that such a statute could not be made applicable.

But it is said that our experience under the general law has demonstrated its applicability, and that a decision of the question has been set at rest by the legislature itself. At first blush this suggestion seems to afford a solution for the problem presented; but no Act of a legislative assembly is irrepealable, and though the general law may have served the purpose intended during the six years succeeding its enactment in 1911, it was altogether competent for the last legislative assembly to determine that it has spent its force and is no longer adequate to the purpose for which it was enacted. It might have determined that with the creation of the twelve new counties, the physical and topographical conditions of the state no longer admit of its practical application, and that at the present state of our history and development no general law upon that subject can be made to serve the best interests of the commonwealth. Had it so declared by repealing the general law, we should not deem it within the province of this court to attempt to interfere, and if, with the general law repealed, it had then passed the special act creating Carter county, we should have accepted its determination that a general law could not be made applicable as conclusive upon us.

But it is insisted that the general law was not repealed, and that under its provisions new counties may now be created, if they can meet the requirements which its terms impose. But if no community in the state can now or hereafter meet those requirements, instead of being a law for the creation of new counties, it becomes a law prohibiting the formation of new counties. In other words, it has ceased to fulfill the purpose for which it was enacted. It has ceased to be applicable to the subject in the constitutional sense.

If the legislature possessed the power and authority, by repealing the general law, to say that a general statute cannot

now be made applicable to the creation of new counties, it likewise possessed the authority to declare the same result by the enactment of this special law. We will not indulge the presumption that the legislative assembly wittingly violated the Constitution; but, assuming that it is necessary to do so in order to uphold the validity of the Act in question, we will presume that due consideration was given to the concluding sentence of section 26, and that the enactment of this special law was the means employed to express the legislative determination that the general law is no longer applicable to the creation of new counties under the conditions as they now exist. The same conclusion might have been expressed more lucidly by repealing the general law outright; but, if the determination was reached, the particular means by which it was expressed is of no moment.

In passing, we may observe that there are certain provisions contained in the Act creating Carter county which are clearly invalid; but they refer to incidental matters, and may be eliminated without impairing the Act as a whole. It is inconceivable that they could have operated as inducements to the passage of the Act, or that without them the measure would not have received favorable consideration at the hands of the legislature.

The demurrer to the complaint is sustained, and the proceeding is dismissed.

*Dismissed.*

MR. CHIEF JUSTICE BRANTLY: I concur in the conclusion reached by Mr. Justice HOLLOWAY, but do so on the ground that I am not satisfied that the injunction found in section 26, Article V, of the Constitution, is addressed to the judicial department of the government. The creation of new counties is a matter of public policy. The propriety of creating one at any time depends upon fact conditions as they exist at that time. These the legislature can more readily ascertain and weigh than the courts. I therefore incline to the opinion that the injunction is addressed exclusively to the legislature, and hence that the Act in question must be upheld.

MR. JUSTICE SANNER: Heartily subscribing to the doctrine, so often announced by this court, that in testing the constitutionality of an Act of the legislature the question is not whether it is possible to condemn, but whether it is possible to uphold, and accepting, for the most part, the reasoning of Mr. Justice HOLLOWAY in the above opinion, I am nevertheless unable to assent to all of it or to the conclusions announced. Briefly stated, my reasons are these:

The injunction expressed in the final clause of section 26, Article V, is prohibitory (Const., sec. 29, Art. III) and—if the Constitution is to have any force at all—is binding upon the legislature, the courts and every other agency engaged in the government of this state. The language of section 26, Article V, is simple, direct and plain; no resort to authority for its interpretation is required; he who runs may read it. Its purport is that in certain enumerated cases no special Act-shall ever be passed, nor shall such Act be passed in any other case to which a general law can be made applicable; in other words, the prohibition is absolute as to the thirty-four enumerated cases and conditioned in every other only upon the fact that a general law can be made applicable to the subject matter. Why the prohibition was inserted is perfectly clear. To pass an Act for a given case is easy; to frame general legislation, which shall operate justly upon divergent conditions, requires time and thought; unchecked legislation has always tended to degenerate into the easier courses of specialism, log-rolling, action upon the theory that the legislators have favors to exchange, instead of duties to perform; and the purpose of the prohibition is to furnish the check necessary to prevent just this sort of degeneration.

Confessedly, the Act creating Carter county is a special one. When it was passed we had, and I think still have, a general law upon the statute books relative to the creation of new counties; so "applicable" to the subject has that law been that twelve new counties have been created under it. Its enactment and successful operation furnish proof that the subject is one

amenable to treatment by general law; and that fact stands established unless the legislature, with power so to do, has declared that the fact no longer exists.    I do not question at this time that the legislature could have so declared.    What the opinion asserts, and what I deny, is that, by passing the special Act creating Carter county, the legislature did declare the general law no longer operative, thus in effect repealing it, and did declare that no general law could be made applicable to the subject under present conditions.    This not only invokes the disfavored doctrine of implied repeal, but effects such a repeal of a general law by a purely special Act, a proceeding almost unheard of in the annals of jurisprudence; it is not, in my opinion, the natural inference from the enactment of the special law—such inference rather being that, since Carter county could not meet the requirements of the general law, a special case should be made of it without regard to the general law; the written record of the legislative session shows that the general law was deemed applicable to the subject of new counties, because the legislature declined three specific proposals (House Bill 51; House Bill 322; Senate Bill 68) for its amendment; the presence in the special Act of provisions admittedly unconstitutional shows affirmatively that in its enactment the legislature was not thinking of the Constitution; and finally, although every theory on which courts have relied in avoidance of provisions similar to section 26, Article V, is invoked by the respondents, the view that the special Act operates as a repeal of the general law was not exploited in the briefs or argument.

A study of the authorities cited by the respondents discloses much blind following of precedents which take no account of the "mandatory and prohibitory" character of constitutional provisions such as ours are declared to be; and these authorities lead logically to the result, which many of them express, that in every instance the applicability of a general law is a legislative question—a proposition that cannot be maintained.    Then, too, some of these authorities go to the length of saying that the criterion, which is to be applied exclusively by the legis-

lature, is the applicability of a general law to the particular case, instead of the amenability of the subject presented by the particular case to treatment through general law.   Such reasoning begs the whole question, and makes advisory only what the Constitution explicitly says is mandatory and prohibitory; under it the legislature could properly except a particular citizen or a particular county from the operation of the laws against homicide, upon the ground that in its judgment they do not apply to him or to it, which is an absurdity on its face.

Respondents lay emphasis on the propositions that this court has decided the creation of new counties by special Act to be permissible under the Constitution, that by the rule of *ejusdem generis* the concluding clause of section 26, Article V, can have no application to the subject of new counties, and that this section came to our Constitution from the Act of Congress approved July 30, 1886 (24 Stat. 170, Chap. 818), with interpretations, judicial and congressional, which permit the creation of new counties by special Act.   The decisions of this court, to which appeal is made, were rendered before any general law for the creation of new counties was passed, before it was known that such a law could be made applicable.   So far as these utterances are not pure *dicta,* they are justified by the knowledge then possessed upon the subject; possibilities, considered with reference to human action, are always conditioned upon human capacity, and this in turn upon knowledge; what is not known to be possible is, for the time being, impossible; and if, as the above opinion asserts, and as I believe, the question of the applicability of a general law to the subject of new counties was in the first instance for the legislature, the fact could not be known to the court until the experiment was tried.   The rule of *ejusdem generis* cannot be applied to the provision in question, for the reason that the preceding clauses of the section refer to many subjects of legislative action, some of which belong to the same general class as the creation of new counties. The argument, whatever its sanction, based upon the source of section 26, is answered by the fact that section 26 did not come

from the Act of Congress approved July 30, 1886; it came bodily, with one slight amendment, from the proposed Constitution of 1884, as the debates of the convention which formulated our present Constitution disclose.

To my mind, the opinion written by Mr. Justice HOLLOWAY correctly assumes that the Act creating Carter county cannot be upheld on any theory other than that adopted in the opinion; and, as I think it cannot be so upheld, I must conclude that it cannot be upheld at all.

(Submitted March 26, 1917. Decided May 15, 1917.)