STATE ex rel. BERTHOT, Relator, v. GALLATIN
COUNTY HIGH SCHOOL DISTRICT et al., Respond-
ents.

(No. 7,574.)

(Submitted April 29, 1936.   Decided May 22, 1936.)

[58 Pac. (2d) 264.]

*Mr. Walter S. Hartman,* for Relator, submitted a brief and argued the cause orally.

*Mr. Edmund Burke, Jr.,* and *Mr. H. A. Bolinger, Jr.,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Original application by the state, on relation of A. G. Berthot, for injunction to prevent the acceptance of a governmental grant of $203,727, and the issuance of bonds for $249,000 for the erection and equipment of a high school building at Bozeman.

The relator exhibits with his petition the entire record of the proceedings leading to the creation of the respondent district, and also the record of all steps taken preliminary to the threatened issuance of the bonds, thus presenting all facts necessary to a determination of the validity of such bonds when issued, the truth of which facts is admitted by respondents' general demurrer to the petition.

The Gallatin County High School District was organized for the purpose of taking advantage of the emergency relief measures provided by special legislation, and all steps in its organization and preliminary to the issuance of the bonds were taken in strict compliance with the provisions of Chapters 47 and 24

of the Extraordinary Session of the Legislative Assembly of 1933–34.

As grounds for restraining the issuance of the bonds, the relator asserts: (1) That the respondent district has no legal existence, for the reason that Chapter 47, above, is void on several constitutional grounds; (2) that Chapter 24, above, expired on June 1, 1935, although it was sought to continue it in force by the enactment of Chapter 135, Laws of 1935, as this latter Act is violative of certain constitutional provisions; (3) that the proceedings had do not conform, in certain particulars, to the provisions of Chapter 147 of the Laws of 1927; and (4) certain irregularities irrespective of which Act is controlling.

Chapter 47, above, is "An Act to Provide Emergency Relief by the Creation of High School Districts in Counties Having County High Schools, and Authorizing the Boards of Trustees * * * to Borrow Money."

Under attack (1) above, it is asserted (a) that, as the "creation" of such district is left to a commission consisting of the board of county commissioners and county superintendent of schools, it constitutes a delegation of nondelegable powers, in violation of section 1 of Article IV and section 1 of Article V of our Constitution, the first of which divides the powers of government between the three distinct departments and prohibits the exercise by one department of powers belonging to another; the second vests the power to make laws in the legislative department.

While the legislature may create and abolish school districts and change the boundaries thereof, such action is usually provided for by general laws in which the legislature formulated the policy broadly, leaving the working out of the details to designated officers. Such provisions—and of such is Chapter 47, above—do not violate the provision against delegating legislative power to administrative officers. (See *State ex rel. City of Missoula* v. *Holmes,* 100 Mont. 256, 47 Pac. (2d) 624, 628, 100 A. L. R. 581; *Pierson* v. *Hendricksen,* 98 Mont.

244, 38 Pac. (2d) 991; *Chicago, M. & St. P. Ry. Co.* v. *Board of Railroad Commrs.*, 76 Mont. 305, 247 Pac. 162.)

(b) It is asserted that Chapter 47 is in contravention of section 36 of Article V, Constitution, which provision prohibits the legislature from delegating to any "special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects * * * or to levy taxes, or to perform any municipal functions whatever."

We see in Chapter 47, above, no delegation of authority to interfere with any duly constituted authority, illegally, if it can be said that the constitutional provision could, under any circumstances, have application to such an entity as that under consideration. (*State ex rel. City of Missoula* v. *Holmes,* supra.)

(c) It is suggested that, in providing for the creation of a district without an election, the "due process of law" clause of the Constitution is violated (Const., Art. III, sec. 27). This contention is without merit. Chapter 47 merely provides a means by which such entities as are therein named may be created for the purpose of proceeding thereunder and under the general laws; it provides the process of law which is to be followed if the entity, when created, would deprive any person of property.

But it is said (d), that by reference to "all of the laws of this state governing the issuance and sale of bonds by school districts, the levying of taxes for the payment of the principal and interest thereof," etc., in Chapter 47 (section 4), the constitutional provision that "no law shall be revised or amended, or the provisions thereof extended by reference to its title only, but so much thereof as is revised, amended or extended shall be re-enacted and published at length" (sec. 25, Art. V), is violated. This Act falls clearly within the rule respecting "reference statutes," that is, statutes which by reference adopt, wholly or partially, pre-existing statutes; the rule being that such statutes are not strictly amendatory or

revisory in character, and are not obnoxious to the constitutional provision. (25 R. C. L. 870; *Spratt* v. *Helena Power Transmission Co.,* 37 Mont. 60, 94 Pac. 631; *In re Burke,* 190 Cal. 326, 212 Pac. 193; *Van Pelt* v. *Hillard,* 75 Fla. 792, 78 So. 693, L. R. A. 1918E, 639; *People ex rel. Drake* v. *Mahaney,* 13 Mich. 481.) The purpose and effect of section 25 of Article V will be discussed later.

(e) Finally, with respect to Chapter 47, above, it is asserted that the Act is void because violative of section 26 of Article V of the Constitution, prohibiting the enactment of a "special law" in all cases where a general law can be made applicable, in that section 5A of the Act provides "that nothing in this Act shall apply to any high school districts in a county having a population of * * * 45,000, or over, based on the United States Census of 1930."

The question as to what is and what is not a "special law" within the meaning of section 26, above, has been so thoroughly discussed by this court as to render it unnecessary here to repeat the general principles relating thereto. (See *State ex rel. Fisher* v. *School District,* 97 Mont. 358, 34 Pac. (2d) 522; *State ex rel. Bray* v. *Long,* 21 Mont. 26, 52 Pac. 645.) Under the authorities a classification according to population is reasonable and not violative of the constitutional prohibition. It is, however, suggested that, basing the classification on the census of 1930, the proviso does not necessarily reach all counties which fall within the class. No case is cited in support of the suggestion that this proviso voids the act. Classifications are frequently based upon the number of votes cast in the several subdivisions at the last general election, and such Acts are held valid, as are classifications based upon population. In either instance there is a possibility that other entities may qualify by numbers for the classification and thus render the law not applicable to all within the class. However, taking the last official census as the basis for such classification provides a reasonable and workable test for inclusion within a class, and we cannot say, in the peculiar circum-

stances of this emergency legislation, that such a possibility could become an eventuality and demonstrate the unconstitutionality of Chapter 47 "beyond a reasonable doubt." In a somewhat lengthy search of the authorities we have found no case directly in point.

In 1882 the supreme court of New Jersey had under consideration the constitutionality of an Act declaring a classification based upon the census of 1875, and, while the court held the Act unconstitutional on other grounds, it seems to have considered that basis for classification as a proper one. (*State (Zeigler, Prosecutor)* v. *Gaddis,* 44 N. J. L. 363.)

When the courts are called upon to pronounce the invalidity of an Act of legislation passed with all the forms and ceremonies requisite to give it the force of law, they should approach the question with great caution and should declare it a nullity only when the invalidity thereof is placed, in their judgment, beyond a reasonable doubt. (*In re Wellington, Petitioner,* 16 Pick. (Mass.) 87, 26 Am. Dec. 631.)

In the decision in *State ex rel. City of Missoula* v. *Holmes,* above, this court summarized the rules by which we are guided in the consideration of the question of the constitutionality of laws, as follows: "In the determination of the question * * * a statute, if possible, will be construed so as to render it valid. (*Hale* v. *County Treasurer,* 82 Mont. 98, 105, 265 Pac. 6.) It is presumed to be constitutional, and all doubts will be resolved in favor of its validity if it is possible so to do. (*State ex rel. Toomey* v. *State Board of Examiners,* 74 Mont. 1, 238 Pac. 316, 320.) The invalidity of a statute must be shown beyond a reasonable doubt before the court will declare it to be unconstitutional. (*Herrin* v. *Erickson,* 90 Mont. 259, 2 Pac. (2d) 296.) And a statute will not be held unconstitutional unless its violation of the fundamental law is clear and palpable. (*Hill* v. *Rae,* 52 Mont. 378, 158 Pac. 826, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495.) The Constitution is, as frequently stated by this court, a limitation upon the powers of the legislature, which in the passage of

any law is acting under inherent powers, restricted only by the provisions thereof. (*State* v. *State Board of Equalization,* 56 Mont. 413, 185 Pac. 708, 186 Pac. 697.)'' (See, also, *State ex rel. Tipton* v. *Erickson,* 93 Mont. 466, 19 Pac. (2d) 227.)

In the above case of *State ex rel. City of Missoula* v. *Holmes,* we upheld the constitutionality of Chapter 47, above, and now hold that it is valid and constitutional as against any and all attacks made upon it herein.

Chapter 24 of the Extraordinary Session of 1933–34 has been before the court in several cases, and would seem to be valid and invulnerable to any attack, constitutional or otherwise. (See *State ex rel. Fisher* v. *School District,* supra; *Shekelton* v. *Toole County,* 97 Mont. 213, 33 Pac. (2d) 531; *Pierson* v. *Hendricksen,* supra; *State ex rel. Sullivan* v. *School District,* 100 Mont. 468, 50 Pac. (2d) 252.)

However, by the provisions of sections 2 and 10 of Chapter 24, above, as amended by Chapter 36 of the Extraordinary Session of 1933–34, the expiration date of the Act was March 30, 1935; it did not repeal former laws on the subject but permitted the exercise of power under either, and constituted merely ''an additional method of carrying out the powers'' therein authorized.

2. By Chapter 135, Laws of 1935, effective March 13, 1935, the legislature sought to extend the effective period of life of Chapter 24, above, but the relator contends that this Act is void (a) as violative of section 25, Article V of the Constitution, which declares that ''no law shall be revised or amended, or the provisions thereof extended by reference to its title only, but so much thereof as is revised, amended or extended shall be re-enacted and published at length''; and (b) the subject-matter of the chapter is not clearly expressed in the title, in violation of section 23 of Article V of the Constitution.

Chapter 135, in its entirety, reads as follows:

''An Act Extending to June 1, 1937, the Period of the Public Works Emergency Relief Program Authorized by Chapter 24 of the Laws of Extraordinary Session of the

Twenty-third Legislative Assembly of 1933–1934, and Repealing All Acts in Conflict Herewith.

"Be it enacted by the Legislative Assembly of the State of Montana:

"Section 1. That as an emergency measure, the effective period of Chapter 24 of the Laws of the Extraordinary Legislative Assembly of Montana of 1933–1934 be, and the same is hereby extended to June 1, 1937, and that all the provisions of said Act shall be and remain in full force and effect until the date aforesaid, on which date said Act shall cease to be operative. Any and all acts authorized by said Chapter 24 may be undertaken or done by any of the political subdivisions or governmental agencies of the state therein enumerated until June 1, 1937. Nothing herein contained shall be construed as limiting or in any manner affecting any legislation enacted by this Legislative Assembly relating to the powers, duties and authority of the State Water Conservation Board.

"Section 2. All Acts and Parts of Acts in conflict herewith are hereby repealed.

"Section 3. This Act shall take effect upon its passage and approval.

"Approved March 13, 1935."

(b) There is no merit in the second attack on Chapter 135. It is true that section 23 of Article V requires that the subject-matter of the Act shall be clearly expressed in its title, and, if an Act offends against this mandate, the court will not hesitate to declare the Act, or so much thereof as is offensive invalid. (*State* v. *Cunningham,* 35 Mont. 547, 90 Pac. 755; *State ex rel. Holliday* v. *O'Leary,* 43 Mont. 157, 115 Pac. 204; *State ex rel. Foot* v. *Burr,* 73 Mont. 586, 238 Pac. 585.) Here, however, the purpose of the Act is to continue Chapter 24 in force and effect until a specified date; that is the subject-matter of the Act, clearly expressed in the title. There is no matter expressed in the Act which is not expressed in the title, and, if an Act can be continued in force in this manner, the title is sufficient.

(a) The asserted invalidity of Chapter 135, above, as in ▮▮▮▮▮ violation of section 25 of Article V of the Constitution, is the most serious attack made upon the proceedings looking toward the issuance of the bonds in question.

It is patent from a reading of Chapter 135 that it does not "revise" the Act to which it refers; nor does it directly "amend" any part of the Act affecting the subject-matter thereof. It may be said that it impliedly amends section 10, declaring the effective period of Chapter 24, and so much of section 2 thereof as has reference to that period, by declaring that "as an emergency measure, the effective period of Chapter 24 * * * is hereby extended to June 1, 1937." But this implied amendment is merely an extension of the effective period by a direct and independent piece of legislation.

This court has said that "section 25 is absolute in its terms. It means that under no possible set of circumstances may a law be revised or amended by reference to its title only, and any Act passed in violation of its provisions is absolutely void." (*State ex rel. Ford* v. *Schofield,* 53 Mont. 502, 165 Pac. 594, 595.) This declaration was made, however, not in considering the constitutionality of an Act with reference to the provisions of section 25, but merely by way of comparison in considering an Act asserted to be violative of section 26, and is prefaced by the statement that "the concluding sentence of section 26 above is not an absolute prohibition in the sense that the preceding section is." While, therefore, the declaration as to section 25 may be a correct interpretation, as used it is *obiter,* and, if correct, is not necessarily controlling here. If, as suggested, Chapter 135 impliedly amends section 2 and 10 of Chapter 24, it does not thereby violate section 25, above, for, as this court has said respecting a somewhat similar situation: "Suffice it to say that the constitutional inhibition against revision or amendment of a law by reference to its title only has no application to amendments by implication." (*King* v. *Pony Gold Min. Co.,* 24 Mont. 470, 62 Pac. 783, 786.)

In most states having a constitutional inhibition along the line of our section 25, above, it is only against revision or amendment, but in Alabama (Const. 1901, sec. 45), Arkansas (Art. V, sec. 23), Colorado (Art. V, sec. 24), Kentucky (sec. 51), North Dakota (sec. 64), New Mexico (Art. IV, sec. 18), Oklahoma (Art. V, sec. 57), Pennsylvania (Art. III, sec. 6), and Wyoming (Art. III, sec. 26), the additional clause appearing in our section 25, above, ''or the provisions thereof extended,'' is found. In these states it is held that so-called ''Reference Statutes''—Acts embodying former laws therein by reference to them without reenacting the existing law as a part of the new—do not violate the inhibition against extending the provisions thereof by reference to the title. (*Savage* v. *Wallace,* 165 Ala. 572, 51 So. 605; *State* v. *McKinley,* 120 Ark. 165, 179 S. W. 181; *Denver C. R. Co.* v. *Nestor,* 10 Colo. 403, 15 Pac. 714; *Lyman* v. *Ramey,* 195 Ky. 223, 242 S. W. 21; *State* v. *Fargo Bottling Works Co.,* 19 N. D. 396, 124 N. W. 387, 26 L. R. A. (n. s.) 872; *City of Pond Creek* v. *Haskell,* 21 Okl. 711, 97 Pac. 338; *Guenthoer's Estate,* 235 Pa. 67, 83 Atl. 617; *State* v. *Armstrong,* 31 N. M. 220, 243 Pac. 333; *Edwards* v. *City of Cheyenne,* 19 Wyo. 110, 114 Pac. 677, 122 Pac. 900.) And see our own cases, *Spratt* v. *Helena Power Transmission Co.,* supra; *King* v. *Pony Gold Min. Co.,* supra; *State* v. *Centennial Brewing Co.,* 55 Mont. 500, 179 Pac. 296. Such statutes are neither amendatory nor revisory, and they do not extend ''the provisions'' of the law to which they refer—the two laws remain as separate entities. The fact that the original law is made a part of the new act by reference does not affect the original law. (*Phoenix Assur. Co.* v. *Fire Department,* 117 Ala. 631, 23 So. 843, 42 L. R. A. 468.)

Here the reference in Chapter 135 is not to the ''title'' of Chapter 24, but to the Act itself, its body and substance, ''the provisions thereof,'' if you will, but does not purpose to change those provisions in any particular; it merely purposes to extend the beneficial effect of those provisions for an additional two years. This is to *prolong,* rather than to *extend,*

the life of the Act. According to Century Dictionary, to "extend" means "to make more comprehensive; enlarge the scope of; give wider range." (*State* v. *Armstrong,* supra.)

Our attention has been called to, and we have found, no case dealing with such a statute as this; the nearest approach to it is found in statutes granting exemptions from execution "in addition to all other exemptions," such as Chapter 120 of the Laws of 1933. Such an Act more nearly approaches an extension of the provisions of the previous law than does the Act before us, which prolongs the life of the previous law for an additional period, but does not extend or alter its *provisions* in any particular.

The state of Washington has a constitutional provision which differs from ours but is, in effect, the same by reason of other prohibitions found in its Constitution. Originally it was there held that such an Act was unconstitutional. (*Copeland* v. *Pirie,* 26 Wash. 481, 67 Pac. 227, 90 Am. St. Rep. 769.) But later the court said of that opinion: "If the Act of 1897 was strictly amendatory in its character, the conclusion of the court was unavoidable; but the legislature in its wisdom did not see fit to enact it in that form, and it may well be doubted whether the court did not go too far in limiting and restricting the legislature as to the mode it might pursue in the enactment of laws. (*Lockhart* v. *City of Troy,* supra (48 Ala. 579).) In the course of its opinion in the case cited, this court said: 'In construing similar constitutional provisions, the courts seem generally to have held that this requirement does not apply to supplemental Acts, not in any way modifying or altering the original Act. * * * The rule there stated is no doubt the correct one; but was not the Act of 1897 a supplementary Act within the meaning of that rule? It in nowise altered or amended existing laws, but simply increased the existing exemptions, by adding a new exemption of a different kind. * * * That court proceeded upon the theory that 'the new Act is not complete, but refers to a prior statute, which is changed, but not repealed, by the new Act, so that the full

declaration of the legislative will on the subject can only be ascertained by reading both statutes, the very obscurity and the tendency to confusion will be found which constitutes the vice prohibited by this section of the Constitution.' But how often must we look to two or more Acts to ascertain the full declaration of the legislative will? * * ' * Followed to its logical conclusion, this argument would compel the legislature to embody in a single enactment, or in amendments thereto, all legislation relating to a single subject. Such was not the object or purpose of the provision in question." It was there held that an Act relating to cities of a certain class, determined according to population, was not rendered invalid by requiring reference to other enactments to determine the powers of such cities. (*State ex rel. Hunt* v. *Tausick*, 64 Wash. 69, 116 Pac. 651, 657, 35 L. R. A. (n. s.) 802.) It is there further said: "The purpose of the constitutional provision was to protect the members of the legislature and the public against fraud and deception, not to trammel or hamper the legislature in the enactment of laws."

This class of legislation, that is, the so-called "reference statutes," is not obnoxious to the constitutional provision under consideration, for the reason that such a statute does not revise or amend the original Act to which reference is made; nor does it extend the provisions thereof. "That prohibition is directed against the practice of amending or revising laws by additions or other alterations which, without the presence of the original Act, are usually unintelligible." (*State ex rel. Bragg* v. *Rogers*, 107 Ala. 44, 19 So. 909, 912, 32 L. R. A. 520.) Yet, whenever a former Act is thus incorporated in a new enactment, to understand the full scope of the new law one must go to the original enactment. So here, reference is made to Chapter 24, above, an Emergency Act, the provisions of which are not altered in the slightest particular and which may be fully ascertained by a reading of that chapter, without reference to Chapter 135, above, while this later chapter advised the members of the legislature and the public that all of those

provisions are still in full force and effect, but that the effective date thereof is continued for two additional years.

Chapter 135 is not obnoxious to the inhibition of section 25 of Article V of the Constitution, and is, therefore, valid.

3. As we find that the law under which the respondents propose to issue the bonds in question (Chapters 24 and 47, Laws of Extraordinary Session of 1933–34) are valid and existing laws, and that all of the provisions thereof have been regularly and fully complied with, it is not now necessary to determine whether or not the issuance of the bonds would be legal under the provisions of Chapter 147, Laws of 1927. (*Shekelton* v. *Toole County*, supra.)

4. (a) The resolution of the board makes provision for the issuance of bonds in the sum of $249,000; whereas the people, at the election held, voted the issuance of $256,500 bonds. The only argument made in support of the attack on the bonds in this connection is that "it would seem that the people are entitled to have as much money loaned them as they voted for." Such action as the board here took was approved by this court recently, the court saying: "Bonds may be issued in a lesser amount than that authorized by the election," citing cases. (*State ex rel. Sullivan* v. *School District*, 100 Mont. 468, 50 Pac. (2d) 252, 254.)

(b) Finally, the right to issue the bonds is challenged on the ground that they are to be issued, "for the construction solely of a new high school building, whereas the question submitted to the voters at the election provided that the bonds would be issued for the improving, repairing and equipping of existing high school buildings."

The proposition submitted to the voters was as to whether or not the district should sell bonds "in the amount of $256,500 * * * for the purpose of using the proceeds thereof in connection with a grant from the * * * Government * * * for constructing and equipping a new high school building adjacent to * * * the present high school building * * * and the improving, repairing and equipping of

existing high school buildings." The notice of the election and the form of the ballot indicated that the exact details of the project would be the subject of further consideration, and the notice contains no commitment respecting the division of funds raised between the two projects. There is an intimation in the record of the proceedings that the amount necessary for repairs was inconsiderable, and it may be that, on finding that the government would only consider a grant and loan for a new building, the amount intended for use on the old building was deducted from the amount fixed in the notice and ballot. Or it may be that the board has arranged to take care of the old building out of the amount received from the bonds without out resort to the grant. On the showing made we see nothing in this attack to warrant the relief sought.

On consideration of the entire record, we find the proceedings for the issuance of the bonds invulnerable to each and every attack made by the relator. The respondents' demurrer is sustained, and the proceeding dismissed.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent, did not hear the argument and takes no part in the foregoing decision.